**Michael C. HICKS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 96–CM–434.

District of Columbia Court of Appeals.

Argued May 6, 1997.

Decided May 29, 1997.

Betty J. Clark, appointed by the court, for appellant.

Adam L. Rosman, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN, and RUIZ, Associate Judges.

FERREN, Associate Judge:

On October 17, 1995, after a one-day bench trial, the trial court convicted appellant Michael C. Hicks of possession of a controlled substance (cocaine). *See* D.C.Code § 33–541(d) (Supp.1996). Hicks argues on appeal that the evidence was insufficient to support his conviction because the government failed to introduce evidence of a "measurable" amount of cocaine, where the chemical analysis of the substance indicated the weight of the powder but did not provide the percentage of cocaine.[1] We conclude that the government satisfied its burden of proof by establishing a measurable amount of the mixture, which itself is a controlled substance; the government, therefore, does not need to show a measurable

amount of the active ingredient, cocaine. Accordingly, we affirm.

## I.

On February 1, 1995, Officers from the Metropolitan Police Department executed a search warrant at a rooming house on Park Road, N.W. During the search of a closet in a basement bedroom, the officers discovered a jacket containing $1,570 in cash. The officers also found narcotics paraphernalia—including razors, empty ziplock bags, and syringes—on top of a dresser in the same bedroom. Inside the dresser, they found a black box. An examination of the box revealed one ziplock bag containing a white, rock-like substance, and several empty ziplock bags. The officers then informed the building's residents, who had been gathered on the first floor before the search, that the police had recovered drugs and cash in the basement bedroom. Hicks replied that he lived in that particular room and that the cash belonged to him; Hicks also said "he don't sell drugs, he just use drugs." Hicks then told the officers that two other individuals lived in the basement in the room where the narcotics were recovered.[2]

The government introduced a chemical analysis of the recovered substance through the standard form DEA–7. The report said that the evidence included "1 Colorless ziplock containing 1 green ziplock containing white powder found to contain cocaine hydrochloride," and that the powder weighed 0.006 grams. The section of the DEA–7 calling for the strength of the active ingredient was not completed. The DEA–7, therefore, did not indicate the amount of cocaine hydrochloride present in the 0.006 grams of powder, either as a percentage or by weight.

---

1. Hicks also argues that the evidence was insufficient to establish that he was in constructive possession of the recovered drugs. We reject this argument below.

2. Hicks testified that he shared the basement apartment with Carol Thompson and Ernie Johnson, and that they rotated through the various *areas and* rooms in the apartment. According to Hicks, the basement area was like a one bedroom apartment, except that the bedroom was

divided in half by a curtain for more privacy. Two persons would sleep in the bedroom while the other slept on a sofa-bed in the living room. Hicks admitted he was a drug user and he had probably used drugs that day, but he added that he used heroin, and that only Johnson used cocaine. Hicks also testified that only Thompson was using the bureau at the time the search warrant was executed.

■ At the end of the government's case, and again at the close of Hicks's own case, Hicks moved for judgment of acquittal on the ground that the DEA-7 did not establish the existence of a measurable amount of cocaine hydrochloride.[3] The court denied his motion, and, after Hicks was convicted, he filed a timely notice of appeal.

## II.

■ In *Thomas v. United States*, 650 A.2d 183 (D.C.1994) (en banc), this court held that to establish a violation of the District of Columbia Controlled Substances Act (CSA),[4] the government must "prove there was a measurable amount of the controlled substance in question." *Id.* at 184. *Thomas* rejected the usability standard which had previously governed in the District and brought our jurisprudence in line with the federal courts' interpretation of the United States Controlled Substances Act on which the District's law was based. *See id.* at 189–97. The present case involves a question not addressed in *Thomas:* Does the government need to prove a measurable amount of the active ingredient, cocaine, or is it sufficient for the government to prove a measurable amount of a mixture containing cocaine? We conclude that the plain language of the statute compels the conclusion that the existence of a measurable amount of a mixture contain-ing cocaine is sufficient to sustain a conviction.

Hicks was convicted of possessing a "controlled substance," in violation of D.C.Code § 33–541(d) (Supp.1996). The CSA defines the term "controlled substance" in D.C.Code § 33–501(4) as including "a drug, substance, or immediate precursor, as set forth in Schedules I through V" in D.C.Code § 33–511 to –533 (1993 Repl. & Supp.1996). The CSA includes within the definition of a Schedule II controlled substance the following:

> [C]ocaine, its salts, optical and geometric isomers, and salts of isomers; *or any compound, mixture, or preparation that contains any substance referred to in this paragraph.*

D.C.Code § 33–516(1)(D) (emphasis added). A mixture of cocaine and a cutting agent is, therefore, a controlled substance in its own right, not merely a mixture *containing* a controlled substance (i.e. cocaine). As indicated above, our case law requires proof of a "measurable amount of the controlled substance." *Thomas,* 650 A.2d at 184. In the present case, therefore, the government presented sufficient evidence to sustain a conviction by proving a measurable amount, 0.006 grams, of a controlled substance—a "powder found to contain cocaine hydrochloride." [5] The government's failure to prove a "measurable" amount of the active ingredient of the controlled substance is immaterial.[6]

3. Hicks also argues on appeal that there was insufficient evidence of his constructive possession of the cocaine. We disagree. To establish constructive possession, the government must prove the defendant was aware of the contraband, had the ability to exercise dominion and control over it, and intended to guide its destiny. *See, e.g., Guishard v. United States,* 669 A.2d 1306, 1312 (D.C.1995). The government case easily satisfied this burden, given that: Hicks told the police he lived in the room where the drugs were found and where significant drug paraphernalia was in plain sight; Hicks added that the jacket found in the same room as the drugs, and containing over one thousand dollars in cash, belonged to him; and Hicks told the police, after learning that drugs were recovered from the basement bedroom, that he used drugs but did not sell them—clearly a statement supporting an inference that Hicks was involved with the recovered drugs and trying to prevent the police from implicating him in the distribution of drugs.

4. D.C.Code §§ 33–501 to –572 (1993 Repl. & Supp.1996).

5. Because of our resolution of the measurability issue, we need not address the government's alternative argument that it introduced sufficient evidence that Hicks "used" the cocaine to support a finding of measurability. *See Thomas,* 650 A.2d at 197 & n. 46.

6. Hicks contended at oral argument—but not before the trial court or in his brief to this court—that the failure to require proof of a measurable amount of the active ingredient would violate due process, and that we should construe the statute to avoid this constitutional infirmity. Hicks cited no cases to support this proposition, and we are unable to discern even the outline of this argument. We note, however, that in the federal system the Supreme Court has construed federal law to impose sentencing based upon the weight of a mixture containing a "detectable" amount of cocaine, relying on a

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*

plain language reading of the statute. *See Chapman v. United States,* 500 U.S. 453, 463–68, 111 S.Ct. 1919, 1926–29, 114 L.Ed.2d 524 (1991). In reaching its conclusion, the Court rejected an apparently similar argument that due process concerns compelled a different interpretation of the statute.