**Kenneth M. BARNES, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 97–CF–2000, 98–CO–390, 99–CO–641.

District of Columbia Court of Appeals.

Argued Sept. 12, 2000.
Decided Oct. 12, 2000.

included offense.

Robert S. Becker, Washington, DC, appointed by the court, for appellant.

Elizabeth H. Carroll, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John

R. Fisher, Elizabeth Trosman, and Matthew G. Olsen, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Found guilty by a jury of possession with intent to distribute cocaine (PWID) and unlawful possession of ammunition, and by the court of unlawful possession of drug paraphernalia, Barnes challenges the sufficiency of the evidence supporting his PWID conviction and contends that the trial court erroneously denied his post-trial motion under D.C.Code § 23–110 (1996) alleging ineffective assistance of counsel. We affirm.

## I.

### A.

Executing a warrant based partly on information obtained from a confidential informant, police entered a rowhouse at 1335 5th Street, N.W., in which Barnes lived together with his wife and three children, including her teen-age nephew. Barnes's sufficiency argument contests the evidence that he constructively possessed the sixteen ziplock bags of cocaine which the police found in the kitchen of the house.[1] In the closet of an upstairs bedroom occupied by the two adults, the police found drug distribution paraphernalia in a shoebox, including an electronic scale and plate (containing apparent narcotics residue), razor blades, a strainer, a piece of cardboard, and ziplock bags. A bag containing loose and boxed ammunition was found in a dresser drawer in the same bedroom. Additional empty ziplock bags and paraphernalia were discovered in the medicine cabinet in the first floor bathroom and beneath a bed in another bedroom containing male clothing. When the police entered the house they found Barnes lying with his eyes open on an upstairs bed, fully clothed, wearing a baseball hat and sneakers. He had $392 in cash in his pockets, as well as a set of house keys and a pager. The seized cocaine had a street value of $1200–1500. Barnes admitted residing in the house and that he was unemployed. At trial, he denied possessing the cocaine but admitted that the drug distribution paraphernalia (and ammunition) were his, purported evidence of an earlier time when he had intended to sell drugs but was talked out of it by his wife.

### B.

This evidence was sufficient to establish Barnes's possession of the drugs, jointly or individually.[2] His occupancy of the house as only one of two adults living there; his admitted ownership of the tools of cocaine distribution found in the bedroom in which he slept; the discovery of additional paraphernalia elsewhere in the house; his possession of a pager and a sizeable amount of currency although (otherwise) unemployed; and the circumstances in which the police found him—all combined to support the jury's conclusion that he had knowledge of and exercised dominion and control over the cocaine. See, e.g., Hicks v. United States, 697 A.2d 805, 807 n. 3 (D.C.1997); Davis v. United States, 623 A.2d 601, 603–04 (D.C.1993); Williams v. United States, 604 A.2d 420, 421 (D.C.1992).[3]

---

1. Specifically, they found fifteen bags on the top shelf of a cabinet inside a grits box, and another bag underneath a can on the bottom shelf of a wall closet.

2. The trial court granted the post-verdict motion for judgment of acquittal of Barnes's wife, the codefendant. As the government has not appealed that determination, we have no occasion to consider the sufficiency of the evidence supporting her conviction.

3. We reject Barnes's further suggestion that if the evidence that he possessed the drugs was legally sufficient, it was insufficient to prove that he intended to distribute them. The quantity and packaging of the drugs, together with the discovery of the cutting and packaging paraphernalia, was more than sufficient

## II.

Barnes's second contention is that the trial judge erred in determining that he was not prejudiced, within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by his trial attorney's failure to call the father of Barnes's wife (Samuel Taylor) as a witness to explain how the cocaine happened to be in the kitchen. At the evidentiary hearing on the § 23–110 motion, Taylor testified essentially that he had found the drugs in a playground while cleaning it up (in January) for a baseball game, then put them in his daughter's house intending to get some money for them later. The trial judge assumed that the attorney had been deficient under *Strickland* in not interviewing Taylor or otherwise exploring his availability as a witness.[4] The judge nonetheless found that Taylor's testimony was "extremely ... implausible and would have been found so by the jury," both for intrinsic reasons[5] and because it was contradicted significantly by testimony which the defense did present from his ex-wife, Ann Taylor, at trial.

## A.

 Under the second—or prejudice—prong of *Strickland,* "the errors of counsel [need not] be shown by a prepon-

derance of the evidence to have determined the outcome," but neither is it "enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. 2052. Rather,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. 2052. Although this court independently reviews the ultimate finding of prejudice (or not) under that standard, "[w]here ... a defendant's claims have been the subject of a hearing, [we] must defer to the trial court's credibility determinations respecting witnesses who testify at the hearing." *Johnson v. United States,* 616 A.2d 1216, 1234 (D.C. 1992); *United States v. Frost,* 502 A.2d 462, 463 (D.C.1985). In this case, after hearing Taylor's testimony, the trial judge found no reasonable probability that a jury similarly considering it would have found it believable enough to call for a different result in the case. Besides the deference to that finding which *Johnson* commands, we recognize—as we have in the analogous

---

to show the required intent. *See, e.g., Earle v. United States,* 612 A.2d 1258, 1270 (D.C. 1992).

4. Finding that trial counsel "had indications from [Barnes] that [Taylor] had put the drugs in [the house]," the judge concluded that "not even to try to find the [witness or the] counsel for the witness when the witness is available to be found in this city raises a serious question as to counsel's performing at an effective level within the meaning of *Strickland.*" The judge added, "I don't need to reach that point," although on a later occasion he acted on the assumption that he had found counsel's performance defective "in not presenting [Taylor]."

5. The judge explained:
 I say that mainly on the testimony about how he came to find these drugs; that is, that he is cleaning up a field in anticipation

of a softball tournament around the 24 th of January, in the middle of winter, raking a field. He testifies that the lights are on at the rec center on this field, I assume in preparation for the softball tournament.
 He finds a cigarette. He doesn't look into it. He doesn't see what kind of drugs they are. He is not a drug dealer. He wants to give it to somebody to have it sold. He thinks that they are drugs. He goes into his daughter's house and puts the drugs up in the grits box, but one falls out, and he places it underneath the can, all that fitting, of course, with what was actually found.
 I think that the ... idea that he would come across this amount of drugs raking grounds for a softball tournament on January 24 th is highly implausible....

context of a claimed *Brady*[6] violation—that "the trial judge was on the scene" and "[i]n a far better position than we are ... to determine whether, given all that had occurred, [Barnes's] defense was ... prejudiced" in the *Strickland* sense by the failure to adduce Taylor's testimony. *Edelen v. United States*, 627 A.2d 968, 972 (D.C.1993).

**B.**

We find no reason to substitute our judgment for the trial judge's as to the probable effect of counsel's performance. As the judge found, Taylor's explanation—only grudgingly self-inculpating—of how the drugs came into the house lacked inherent plausibility because of the unlikely scenario it posited of his chance discovery of them while raking a field in preparation for a baseball tournament in late January.[7] Barnes argues that the jury might have discounted the portions of Taylor's testimony implicitly denying that he was a drug dealer and found reason—enough to create reasonable doubt—to impute possession of the drug stash to him rather than Barnes.[8] But we are not convinced any more than was the trial judge that this hypothesis yields the required "reasonable probability" of a different outcome. *Cf. Strickler v. Greene*, 527 U.S. 263, 289–90, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (emphasizing the defendant's burden, in the related *Brady* context, "to establish a reasonable *probability*" and not "a reasonable *possibility*" of a different result (emphases in original)). The government's case for constructive possession included

the fact that tools for cocaine distribution were found in a closet of the bedroom Barnes shared with his wife, a fact telling enough that Barnes at trial felt constrained to admit possession of those tools while denying possession of the cocaine. Nowhere has Barnes argued that, except for counsel's failure to pursue Taylor's testimony, he would not have taken the stand and admitted owning the paraphernalia. Indeed, as evidence of Taylor's credibility, he urged the judge in the post-trial motion to consider the fact that Taylor's testimony dovetailed with his own at trial, Taylor claiming sole possession of the cocaine but denying knowledge of the paraphernalia on the second floor, while Barnes asserted the converse. Moreover, Ann Taylor, in testifying for the defense at trial, had described seeing her ex-husband in the kitchen ("he had no business coming in there") shortly before the day of the police search as he "went into the cabinet where the canned goods and foods are kept," then gave her an "[un]believable explanation" for his actions.[9] We are not persuaded that adding Taylor's testimony to his ex-wife's would have strengthened the inference of exclusive possession by Taylor enough to meet the *Strickland* test for prejudice.

**C.**

 Barnes further argues that the trial judge erroneously assessed the weight added to the tally of prejudice by the proffered testimony of Isaac Truesdale, which Barnes presented by way of a

---

6. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

7. Illustrating Taylor's testimony which both admitted and distanced himself from culpable possession of the drugs was the following:

> Q. You didn't know what it was, but you thought it was drugs?
> A. Yes.
>
> * * * *
>
> Q. So you were going to sell it?
> A. No. I didn't want to sell nothing to nobody. I said I was going to try to get

somebody to give something for it or to sell it for me.

8. We assume, as did the trial judge, that Taylor would not have asserted the Fifth Amendment privilege at trial, or at least that defense counsel had no reason to doubt that "he was a potential witness in the case" who should be interviewed.

9. The trial judge noted that this was inconsistent with Samuel Taylor's testimony at the hearing that no one else was in the kitchen when he hid the drugs.

separate motion for a new trial based on newly discovered evidence. The judge held a hearing on this motion as well, at which Truesdale essentially declared (a) that over time he had witnessed Samuel Taylor engage in hand-to-hand exchanges with others in the vicinity of the Barnes home in a way suggesting drug transactions, and (b) that he had heard others "tease" Taylor about "letting his daughter take the rap for him [in this case]," prompting Taylor to reply angrily, "Mind your F– business." (On the other hand, Truesdale had never heard Taylor say the drugs found in Barnes's home were his, nor seen Barnes place any drugs there.)

An initial difficulty with Barnes's weighting of the Truesdale testimony is that he explicitly conceded below he was offering it under "[t]he high standard for [assessing] newly discovered evidence claims," *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, not the standard of prejudice for gauging ineffective assistance of counsel.[10] Barnes, in other words, did not argue that his trial attorney's failure to interview Taylor resulted, among other things, in the unavailability of Truesdale as a corroborative witness. Evaluating Truesdale's testimony as we must under the newly discovered evidence standard, we find no abuse of discretion by Judge Burgess in denying the motion. As he explained orally:

> The evidence has to be of such a nature that it will probably produce an acquittal. [*See, e.g., Townsend v. United States*, 549 A.2d 724, 726 (D.C.1988)]. My bottom line on this … is I don't think the case has been improved from your point of view, by this evidence.
>
> And the reason I say that is … I found that Taylor was not credible, not just because he said he found the drugs

in a park, but because he said he found the drugs in a park while he was preparing the park for a baseball game in the middle of January.

> And also, the fact was that he said that he was not a drug dealer, and yet he's finding these drugs … as the occasion for his then being able to put them in the house, which is a central point; those are his drugs in the house, in that place.
>
> Here, Mr. Truesdale, by your own argument, is contradicting Taylor on a critical point. That is, was Taylor a drug dealer. He's saying Taylor is a drug dealer. Taylor is saying I'm not a drug dealer.
>
> So, you've got a situation where the defense is putting on two witnesses to try to bolster the point that there is drugs being planted in the house, each of which is contradicting one another on the question of whether Taylor is a drug dealer[;] … the evidence here is circumstantial, but we can accept it for purposes of argument that it would lead [to] an inference that he was a drug dealer, but Taylor is saying he was not.

\* \* \* \*

> [T]he critical point is whether Taylor is to be believed when he said he put those drugs in there. I don't see how he advances the defense case to bring on somebody else who, in effect, is contradicting Taylor on a point.

Moreover, even factoring Truesdale's testimony into the ineffective assistance claim (*i.e.*, combining it with Taylor's proffered testimony), Barnes has not shown *Strickland* prejudice for essentially the reasons stated by the trial judge.[11]

---

**10.** As the trial judge explained after discussion on the record with Barnes's counsel, "The factors under [Super. Ct.Crim.] Rule 33 are the standards that are going to be applied, that's clear. We just all agreed on it." Barnes admitted that "reasonable investiga-

tion [by trial counsel] would not have uncovered [Truesdale]."

**11.** Furthermore, Truesdale, as the judge pointed out, was shown to have several prior convictions, including one for murder.

## D.

■ Barnes's remaining argument for prejudice is that his attorney's failure to seek disclosure of the identity of the informant whose tip led to the search of the house resulted in the loss of potential corroborative evidence that Taylor—not appellant—was stashing cocaine there for distribution purposes. According to the affidavit in support of the warrant (applied for on January 19), the informant had bought cocaine from an unnamed seller in the house within the previous three days; the warrant was executed on January 25. In his § 23–110 motion Barnes did not mention this claimed deficiency, and made only glancing reference to it in oral argument on the motion; not surprisingly, the trial judge did not address it in his ruling (nor was he asked to in a motion for reconsideration). But assuming the issue has been preserved for review, Barnes offers no explanation of how a motion to disclose the informant's identity might have succeeded. *See United States v. Lyons,* 448 A.2d 872, 874 (D.C.1982) ("The burden is on the person seeking disclosure to demonstrate that the informant is . . . a participant, an eyewitness[,] or someone who could give direct testimony on the events at issue."); *Guishard v. United States,* 669 A.2d 1306, 1317 (D.C.1995) ("[T]he informant was . . . merely a person who had purchased drugs at [the apartment] approximately three days earlier."); *Hooker v. United States,* 372 A.2d 996, 997–98 (D.C.1977).

■ At the same time, the government's obligation to disclose exculpatory evidence under *Brady v. Maryland, supra* note 6, is continuous. If Taylor was in fact the person who sold the informant cocaine, that fact would bear significantly on whether Barnes was prejudiced by his counsel's failure to interview and possibly call Taylor as a witness. And if the government had knowledge of that fact, we would expect it to disclose the information to the defense—now as then. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (The *Brady* rule commonly "involves the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense."). Indeed, if Taylor was not the person who sold the informant cocaine, a *Brady* issue may still be presented if the government has evidence that the seller, whoever it was, was not Kenneth Barnes. We hesitate to discuss this question in the abstract. The most we can say at this point is that such evidence might or might not be sufficiently exculpatory to satisfy the requirements of *Brady,* depending largely on who the seller was. For example, it seems more probable that a jury might have a reasonable doubt that Barnes possessed the drugs found in the kitchen if the jury learned that the seller was not Barnes but was Taylor or someone else who had the run of the house and could reasonably be expected to secrete drugs there. It seems less probable that the jury would be persuaded to doubt the sufficiency of the government's proof if the seller was a stranger who did not have the run of the house, because such a person would not be expected to secrete his drugs there absent Barnes's agreement. We would expect the government to ascertain what its evidence shows, and make a good faith determination—in light of the foregoing considerations and whatever additional considerations may be brought to its attention—whether it has *Brady* material to disclose. Our affirmance is without prejudice to any further proceedings that such disclosure may necessitate.

The judgment of conviction and the orders denying Barnes's post-conviction motions are, therefore,

*Affirmed.*