**Michael THOMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 03–CF–1125.**

District of Columbia Court of Appeals.

Argued Feb. 1, 2005.
Decided Dec. 28, 2006.

4 

Edward DeV. Bunn for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the initial brief was filed, Kenneth L. Wainstein, United States Attorney at the time the supplemental brief was filed, John R. Fisher, Assistant United States Attorney at the time the briefs were filed, and Roy W. McLeese III, Thomas J. Tourish, Jr., and David B. Goodhand, Assistant United States Attorneys, were on the brief, for appellee.

Andrea Roth, with whom James Klein and Samia Fam were on the brief, on behalf of the Public Defender Service as amicus curiae.

Before REID and GLICKMAN, Associate Judges, and TERRY, Senior Judge.*

GLICKMAN, Associate Judge:

The Sixth Amendment to the Constitution guarantees the accused in a criminal prosecution the right to be confronted with the witnesses against him. The Confrontation Clause makes no exception for expert witnesses. In this appeal from a conviction for distributing cocaine, we hold that the Clause was violated when the prosecution introduced a Drug Enforcement Administration chemist's written expert testimony against appellant without calling the chemist to appear and testify in person.

The chemist's written statement was offered in evidence at appellant's trial pursuant to D.C.Code § 48–905.06 (2001), and its admission conformed to the then-prevailing understanding of the Confrontation Clause and the statute. *See Howard v. United States,* 473 A.2d 835 (D.C.1984). After appellant's trial, however, the Supreme Court dramatically transformed Confrontation Clause jurisprudence in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Fidelity to *Crawford* obliges us to recognize that *Howard* has been superseded. Although we do not hold D.C.Code § 48–905.06 unconstitutional in light of *Crawford,* we are obliged to re-interpret the statute so as to preserve its constitutionality. As we now construe § 48–905.06, it still authorizes the government to introduce a chemist's report without calling the chemist in its case-in-chief, but only so long as the record shows a valid waiver by the defendant of his confrontation right. Absent a valid waiver, which usually must be express but under some circumstances may be inferable from a defendant's failure to request the government to produce the author of the report, the defendant enjoys a Sixth Amendment right to be confronted with the chemist in person.

Appellant does not gain a new trial by virtue of our holding. Because appellant

* Judge Terry was an Associate Judge of the Court at the time this case was argued. His status changed to that of Senior Judge on February 1, 2006.

did not make a Confrontation Clause objection at trial, his invocation of the Clause on appeal is subject to the rigors of plain error review. *See* Super. Ct.Crim. R. 52(b). His claim does not survive this scrutiny. While we find error that is (now) plain and that affected appellant's substantial rights, we cannot conclude that the error seriously affected the fairness, integrity or public reputation of the judicial proceeding. For that reason, and because we find no merit in appellant's other claims of error, we affirm his conviction.

## I.

Appellant was arrested late on the evening of August 2, 2002, in a police "buy-and-bust" operation in the Dupont Circle area of Washington, D.C. According to the government's evidence at trial, undercover Officer Jerome McClinton approached appellant and asked him if he had any "20s." In response, appellant displayed several small ziplock bags, each of which contained a white, rocky substance. Officer McClinton took two of the bags out of appellant's hand and gave him twenty dollars in pre-recorded police funds. The officer then walked away to meet Officer Stephanie Garner, who had watched the transaction from a nearby unmarked car. Officer Garner received the two ziplocks from Officer McClinton, field-tested their contents, and obtained a positive reaction signaling the probable presence of cocaine. Meanwhile, Officer McClinton broadcast a lookout for appellant.[1]

The police looked for appellant for about half an hour before Officer McClinton spotted him again in the vicinity of Dupont Circle and pointed him out to two officers on the arrest team. Upon being confronted by those officers, appellant tried to run away. There ensued a brief chase, which ended when the officers found appellant hiding under a car in a nearby alley. Appellant closely matched the lookout description,[2] and Officer McClinton drove by and confirmed that he was the right suspect. The police found no marked money or drugs in appellant's possession, though they did recover cash totaling $194.80.

After appellant was taken into custody, Officer Garner returned to the Third District police station, where she put the two ziplocks given to her by Officer McClinton in a tamper-proof, heat-sealed envelope. Officer Garner deposited this envelope in a lockbox for delivery to a Drug Enforcement Administration (DEA) laboratory, where a forensic chemist would be assigned to analyze the contents of the ziplocks and report the results in writing for use at appellant's trial.

Following his arrest, appellant was indicted on one count of distributing a controlled substance, cocaine, in violation of D.C.Code § 48–904.01(a)(1) (2001). Several months before trial, the government served on appellant's counsel a "Notice of Compliance Pursuant to 48 D.C.Code § 905.06," together with a DEA chemist's report concerning the contents of the ziplocks received from Officer Garner. The Notice informed appellant that the government intended to offer the report in evidence against him, and it outlined the procedures to be followed if appellant elected to subpoena the DEA chemist for examina-

---

1. Officer McClinton described appellant in the lookout as a black male with an unshaven face who weighed approximately 150 to 170 pounds and was about 5'6" or 5'7" tall, and who was wearing a black vest, black shorts, and a black tee shirt with some sort of insignia or print on it.

2. Appellant points out, however, that the arrest report listed his weight as 220 pounds, considerably more than the weight given in the lookout.

tion at trial. "Pursuant to a long-standing arrangement," the Notice advised, "chemists under subpoena for a particular day are available on call and, because they must come to court from Largo, Maryland, require two hours notice to arrive in the courtroom."

Appellant did not subpoena the chemist, and at trial the government offered the chemist's report in evidence in its case-in-chief without calling the chemist to testify in person.[3] The report consisted of a "Certified Report of Controlled Substance Analysis," which reported the chemist's findings; a backup worksheet containing the chemist's handwritten notes on the analysis; and a "Report of Drug Property Collected, Purchased or Seized" signed by Officer Garner and DEA personnel, which recorded the chain of custody of the two ziplocks from the Metropolitan Police Department to the DEA.[4] In the primary document, the Certified Report of Controlled Substance Analysis, the chemist reported her conclusion that the white rocky substance in the two ziplock bags had a net weight of .15 grams and was 79% cocaine base.[5] In addition, for the express purpose of complying with D.C.Code § 48–905.06, the Certified Report included the following unsworn, pre-printed "boilerplate" statement signed by the chemist:

> I attest and certify that I am a trained chemist employed by the United States Department of Justice, Drug Enforcement Administration, that I am charged with an official duty to perform analyses of suspected controlled substances, and that I have legal custody of this report.

> All suspected controlled substance containers received by the Drug Enforcement Administration chemists bear unique Drug Enforcement Administration laboratory numbers. When I received the container(s) bearing the laboratory number(s) set out above, I inspected the container(s) and verified that a sealed condition existed and then properly analyzed the contents for the presence of controlled substances by methods which are reliable and relevant to the identification of a controlled substance which includes procedures generally accepted in the forensic science community. These methods employed chemical reagents and/or analytical instruments which were free of contamination and were operating properly.

> The analyses that I conducted were accomplished while safeguarding the chain of custody of the substances being analyzed. The results of my analyses are accurately set forth on this official report. After I completed my analyses, I placed the original container(s) and contents (except for the substance(s) consumed or those removed for other purposes) into a separate container which I then sealed in such a manner that any tampering would be readily evident. In the case of evidence submitted by the Metropolitan Police for the District of Columbia (MPDC), the officially sealed container bearing the above

---

3. The government moved for admission of the report after Officer Garner confirmed that it bore the same identification number as the heat-sealed envelope in which she placed the two ziplocks given to her by Officer McClinton.

4. The chemist's report is commonly referred to the "DEA–7," but to be precise, it is only the Report of Drug Property Collected, Pur-

chased or Seized that is the Drug Enforcement Administration Form 7, or DEA–7.

5. In the chemist's absence, Officer Garner misunderstood the report and testified that the net weight of the cocaine base was .15 grams. This answer was mistaken, because .15 grams was the reported net weight of the white rocky substance in its entirety.

laboratory number(s) was returned to the evidence vault maintained by the MPDC for proper storage.

Appellant's counsel objected to the admission of the DEA chemist's report solely on the ground that the government had not "laid the proper foundation." The prosecutor responded that no foundation was necessary because the documents were "self-authenticating" and properly admitted "as long as we filed a Notice of Compliance, which we did."[6] Appellant's counsel voiced no additional objection to the chemist's report, and it was admitted in evidence.

Appellant did not challenge the accuracy of the chemist's report. His defense was based on a claim of mistaken identification, *i.e.*, appellant claimed that he was not the person who sold the two ziplocks to Officer McClinton. The jury rejected this defense and found appellant guilty as charged.

## II.

Appellant now contends that his conviction must be overturned because the admission in evidence of the DEA chemist's report in the absence of live testimony from the chemist who wrote it violated his Sixth Amendment "right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. Appellant grounds this claim on *Crawford, supra,* which effected major changes in Confrontation Clause jurisprudence. The Supreme Court decided *Crawford* nine months after appellant's trial. Nonetheless, because appellant did not raise a Confrontation Clause objection at trial, we deem his claim to be subject to the strictures of "plain error" review. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *Marquez v. United States,* 903 A.2d 815, 817 (D.C.2006). Under the test for plain error, appellant must show (1) that the admission of the chemist's report was "error," (2) that the error is "plain," and (3) that it affected appellant's "substantial rights." *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544 (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted). We consider each of these four conditions in turn.[7]

### A. Did the Admission of the Chemist's Report Violate the Confrontation Clause?

In offering the DEA chemist's report in evidence at appellant's trial without calling

---

**6.** *See Giles v. District of Columbia,* 548 A.2d 48, 53–54 (D.C.1988) (holding that a chemist's report is admissible under D.C.Code § 48–905.06 "without need for a testimonial foundation, if four requirements are met: (1) the 'analysis of a controlled substance [must be] performed by a chemist charged with an official duty to perform such analysis,' (2) an 'official report of chain of custody and of analysis of [the] controlled substance' must be 'attested to by that chemist,' (3) the chemist's official report must be 'attested to . . . by the officer having legal custody of the report,' and (4) the official report must be 'accompanied by a certificate under seal that the officer has

legal custody.' "); *accord, Ellis v. United States,* 834 A.2d 858, 858 n. 1 (D.C.2003).

**7.** Whether the chemist's report was admitted in error is a question that implicates the constitutional validity of D.C.Code § 48–905.06 after *Crawford.* Because that statute is utilized in hundreds of drug cases prosecuted in Superior Court each year, the government— citing the need for guidance to the Superior Court—urges us to address the constitutional question under the first step of plain error analysis even if we could avoid it by concluding that other requirements of plain error are not met.

the chemist to testify, the prosecution relied on a statute enacted twenty-five years ago for the purpose of "reliev[ing] ... chemist[s] responsible for analyzing controlled substances from the necessity of appearing at trial" when the chain of custody and the results of the analysis "are not in dispute." Council of the District of Columbia, Committee on the Judiciary, Report on Bill 4–123, "D.C. Uniform Controlled Substances Act of 1981," at 37 (Apr. 8, 1981). To achieve that purpose, the statute, D.C.Code § 48–905.06 (formerly D.C.Code § 33–556), provides as follows:

> In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days

prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

It was not long before the constitutional issue raised by this statute came before us. The appellant in *Howard, supra,* was convicted of possessing and distributing heroin. On appeal, he contended that the admission against him in the government's case-in-chief of a DEA chemist's written report in lieu of the chemist's live testimony violated his Sixth Amendment right to be confronted by the witnesses against him. Relying on *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which instructed that the Confrontation Clause allows the court to admit an unavailable witness's out-of-court statement against a defendant so long as the statement bears "adequate 'indicia of reliability,'" [8] we rejected appellant's claim. We found no Sixth Amendment violation because the chemist's reports, which we said were properly admitted pursuant to both D.C.Code § 33–556 and the "business record" exception to the rule against hearsay,[9] were "sufficiently trustworthy to satisfy the purpose of the Confrontation

---

8. "In sum," the Supreme Court stated in *Roberts,*

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. 2531. Regarding the "normally" applicable requirement of witness

unavailability, the Court reiterated what it called the "basic litmus" test:

> "[A] witness is not 'unavailable' for purposes of ... the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial."

*Id.* at 74, 100 S.Ct. 2531 (quoting, with emphasis added, *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)).

9. *See* Super. Ct. Civ. R. 43–I (made applicable to criminal cases by Super. Ct.Crim. R. 57).

Clause." *Howard,* 473 A.2d at 839.[10] Although the chemist in *Howard* actually was available to testify in person, we excused his absence, citing a statement in *Roberts* that the usual prerequisite of the declarant's unavailability may be relaxed where "the utility of trial confrontation" is perceived to be "remote." *Id.; see Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. 2531 (citing *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). Indeed, we reasoned, the fact that the chemist was available "effectively preserved" the defendant's right of confrontation because the defendant was "free" to subpoena the chemist himself. *Howard,* 473 A.2d at 839.

The reliability-based test of *Roberts* for determining whether the Sixth Amendment requires confrontation thus was the principal foundation of our decision in *Howard.* That foundation was removed when the Supreme Court overruled *Roberts* in *Crawford.* In light of that overruling, *Howard's* constitutional holding no longer can be considered binding precedent. *See Kleinbart v. United States,* 604 A.2d 861, 870 (D.C.1992) ("When intervening constitutional rulings necessitate a change in prior law, a division of this court is empowered to recognize that earlier decisions no longer have force."); *see also Allison v. United States,* 623 A.2d 590, 592 (D.C.1993) ("To the extent that its [constitutional law] decisions may be inconsistent with ours, we must defer to the Supreme Court . . . ."). *Crawford* requires us to consider afresh whether the Confrontation Clause permits the prosecution to introduce a DEA chemist's report against a defendant without calling the chemist in its case-in-chief.

■■■ In *Crawford,* the Supreme Court revised its Confrontation Clause jurisprudence "to reflect more accurately the original understanding of the Clause." 541 U.S. at 60, 124 S.Ct. 1354. In so doing, the Court held that "testimonial" statements of witnesses absent from trial may be admitted against a criminal defendant *"only* where the declarant is unavailable, and *only* where the defendant has had a prior opportunity to cross-examine" the declarant. *Id.* at 59, 124 S.Ct. 1354 (emphasis added); *see also id.* at 68, 124 S.Ct. 1354 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). The Court squarely rejected the alternative *Roberts* approach, which "allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability." *Id.* at 62, 100 S.Ct. 2531. As the Court explained:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It com-

---

10. In finding the DEA reports reliable enough to dispense with confrontation, the *Howard* court deemed it

> significant that the identity of a controlled substance . . . is determined by a well recognized chemical procedure. Thus, the reports contained objective facts rather than expressions of opinion. In addition, the

chemists who conduct such analyses do so routinely and generally do not have an interest in the outcome of trials. In fact, as employees and scientists, they are under a duty to make accurate reports. It is difficult to perceive any motive or opportunity for the chemists to falsify.

*Id.*

mands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . .

Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.

*Id.* at 61–62, 100 S.Ct. 2531.

■ With its declaration that the Confrontation Clause is not subject to "the vagaries of the rules of evidence," the Court also rejected the proposition, embraced in *Roberts,* that the right of confrontation is limited by "firmly rooted" exceptions to the hearsay rule. "The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts." 541 U.S. at 54, 124 S.Ct. 1354. While several hearsay exceptions had become established before 1791, when the Sixth Amendment was adopted, the Court found "scant evidence" that such exceptions ever "were invoked to admit *testimonial* statements against the accused in a *criminal* case." *Id.* at 56, 124 S.Ct. 1354 (emphasis in original).[11] Rather, as the Court observed,

> Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy. We do not infer from these

that the Framers thought exceptions would apply even to prior testimony. *Id. See also Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (holding that testimonial statements are subject to the requirements of the Confrontation Clause even if they are otherwise admissible under the hearsay exception for excited utterances). In short, as the Court succinctly stated in *Davis:*

> "*Roberts* condition[ed] the admissibility of all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford,* 541 U.S. at 60, 124 S.Ct. 1354 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). We overruled *Roberts* in *Crawford* by restoring the unavailability and cross-examination requirements.

126 S.Ct. at 2275 n. 4.

■ Thus, *Crawford* announced a *per se* rule: the Confrontation Clause bars the government from introducing testimonial statements at trial against a criminal defendant without calling the declarant to testify in person, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant, regardless of how reliable the testimonial evidence is perceived to be or whether it fits within a recognized hearsay exception (other than, possibly, the exception for dying declarations, *see Crawford,* 541 U.S. at 56 n. 6, 124 S.Ct. 1354).

11. Underscoring the point, the Court stated that it was aware of only one "deviation" from the general rule that hearsay exceptions could not be utilized to admit testimonial hearsay against a criminal defendant:

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. [Citations omitted.] Although many dying declarations may *not* be testimonial, there is au-

thority for admitting even those that clearly are. [Citations omitted.] We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis.*

*Id.* at n. 6. Thus, the exception for dying declarations, if it exists, is the exception that proves the general rule.

"A critical portion of this holding . . . is the phrase 'testimonial statements.' " *Davis*, 126 S.Ct. at 2273. In *Davis* the Court answered a question left open in *Crawford* and held that *only* testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Id.* "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.*

 Whether it was error to admit the DEA chemist's report at appellant's trial turns, therefore, on whether the report was "testimonial." While the Supreme Court has declined "to spell out a comprehensive definition of 'testimonial' " suitable for all cases, *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, it has furnished ample guidance for present purposes. As the Court said in *Crawford*, looking to both history and constitutional text, the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Id.* at 51, 124 S.Ct. 1354 (citation omitted). And "[t]estimony," the Court noted, "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* (citation omitted). So, for example, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* The Court cited three useful "formulations of this core class of 'testimonial' statements":

— " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially' ";

— " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions' ";

— " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' "

*Id.* at 51–52, 124 S.Ct. 1354 (citations omitted).[12] Subsequently, in *Davis*, the Supreme Court recognized that statements by witnesses in response to police inquiry are testimonial so long as "the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." 126 S.Ct. at 2274. Statements that satisfy these tests need not be under oath, *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, nor need they be made in response to official interrogation, *Davis*, 126 S.Ct. at 2274 n. 1,[13] in order to be deemed testimonial.

 Under every definition of "testimony" and "testimonial" in *Crawford*, as well as the "primary purpose" test employed in *Davis*, the DEA chemist's report in this case constituted a "core" testimonial statement subject to the requirements of the Confrontation Clause. The DEA chemist,

---

12. *See also* Richard D. Friedman, *Confrontation: The Search for Basic Principles*, 86 Geo. L.J. 1011, 1042 (1998) ("[A] declarant should be deemed to be acting as a witness when she makes a statement if she anticipates that the statement will be used in the *prosecution* or *investigation* of a crime.") (emphasis in original).

13. "The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation." *Id.*

a forensic expert employed by a law enforcement agency, was tasked by the government to provide critical expert witness testimony for use against appellant at his criminal trial. As envisioned by D.C.Code § 48–905.06, the chemist's *ex parte* report was designed to serve as this testimony. In form and content, the report was a formal and solemn "attestation"—an affidavit, except that it was unsworn—introduced by the prosecution in lieu of the chemist's live testimony to prove an essential element of the charged offense. In this "unsworn affidavit," the chemist attested—in conclusory fashion—to the identity and quantity of the controlled substance seized from appellant as revealed by her testing, chain of custody, her qualifications and duties as a DEA chemist, the reliability of her testing methods and procedures, their general acceptance in "the forensic science community," and the purity of the chemical reagents and the operability of the analytical instruments that she used in conducting her tests. The use of such *ex parte* affidavits to secure criminal convictions was "the principal evil at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 50, 124 S.Ct. 1354. We agree with *amicus* that "it is difficult to imagine a statement more clearly testimonial." Brief of *Amicus Curiae* at 5.

The government argues that the DEA chemist's report is not testimonial because, per our 1984 decision in *Howard*, it fits within this jurisdiction's hearsay exception for business records, and therefore represents "a type of statement *Crawford* expressly recognizes is not testimonial." Supplemental Brief of Appellee at 14. We are not persuaded by this argument, which we think fundamentally misreads the Supreme Court's opinion. As we explained earlier, in overruling *Roberts*, *Crawford* divorced the Confrontation Clause from the rules of hearsay. It is true that the Court observed that "[m]ost of the hearsay

exceptions [recognized in 1791] covered statements that by their nature were not testimonial—for example, business records...." 541 U.S. at 56, 124 S.Ct. 1354. But this observation about the historical business records exception does not mean that everything qualifying as a "business record" *now* is automatically non-testimonial for Confrontation Clause purposes.

As an historical matter, the exception in 1791 was a very narrow one. *See generally* 5 John Henry Wigmore, *Evidence in Trials at Common Law*, §§ 1518–19 (1974 ed.). In *Crawford*, the Supreme Court found no evidence that the historical business records exception (or any other historical exception apart from that for dying declarations) ever had been "invoked to admit *testimonial* statements against the accused in a *criminal* case," nor any indication that the Framers thought it could be so used. 541 U.S. at 56, 124 S.Ct. 1354 (emphasis in original). Traditionally, the historical business records exception did not encompass records prepared for use in litigation, let alone records produced *ex parte* by government agents for later use in criminal prosecutions. *See, e.g., United States v. Smith*, 172 U.S.App. D.C. 297, 306, 521 F.2d 957, 966 (1975) (discussing the generally accepted "litigation records" doctrine that would "deny the business records exception to any document prepared with an eye toward litigation when offered by the party responsible for making the record."). If, in some jurisdictions, the exception has been enlarged in modern times to include such records, the Supreme Court made it clear enough in *Crawford* that the Sixth Amendment right of confrontation has not shrunk as a result:

Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history

with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances. 541 U.S. at 56 n. 7, 124 S.Ct. 1354.

 Thus, the Supreme Court has defined "testimonial" in functional rather than categorical terms. Broadly speaking, the Court has focused in *Crawford* and *Davis* on the primary anticipated or intended use of the statement, not on whether the statement qualifies as an exception to the rule against hearsay or falls into some other arbitrary testimonial category. It is true that most documents are not testimonial if they qualify as business records, because most such documents are created for ordinary business purposes unrelated to their potential use by the government in a criminal prosecution. Under the Federal Rules of Evidence, for example, a record cannot qualify as a business record if it was prepared for purposes of litigation. *See, e.g., United States v. Feliz*, 467 F.3d 227, 234 (2d Cir.2006).[14] But where a document is created primarily for the government to use it as a substitute for live testimony in a criminal prosecution, the fact that the document might

happen to fall within the jurisdiction's business records exception to the hearsay rule does not render the document non-testimonial. Accordingly, because DEA chemist's reports are created expressly for use in criminal prosecutions as a substitute for live testimony against the accused, such reports are testimonial, whether or not they happen to meet this jurisdiction's definition of a business record. *See State v. Caulfield*, 722 N.W.2d 304, 309–10 (Minn.2006) (holding that state Bureau of Criminal Apprehension laboratory report, offered at trial to prove that substance seized from defendant was cocaine, "was clearly prepared for litigation" and was testimonial).[15]

Citing *Howard*, 473 A.2d at 839, the government also argues that the DEA chemist's report should not be treated as testimonial for Confrontation Clause purposes because it is "an objective report of [an] analysis conducted according to standard scientific practices" by scientists who—though they are employed by the Department of Justice, *i.e.*, the prosecuting authority—have no "motive or opportunity ... to falsify" their results. Supplemental Brief of Appellee at 17–18. "None of the historical examples of *ex parte* testimony discussed in *Crawford* in-

---

**14.** In *Feliz*, the Second Circuit held that routine autopsy reports prepared by the Office of the Chief Medical Examiner of New York are not testimonial because such reports satisfy two criteria that must be met to qualify as a business record under Federal Rule of Evidence 803(6)—they are not made for purposes of litigation (even if the possibility of litigation is foreseeable in some instances) and they do not include observations made by law enforcement personnel. *Id.* at 234–36. Because DEA chemist's reports do not satisfy either criterion, they would not be admissible as business records under FRE 803(6) if offered by the government.

**15.** Commentators on *Crawford* also have reached the conclusion that forensic laborato-

ry reports are testimonial. *See, e.g.*, Richard D. Friedman, *Adjusting to Crawford: High Court Decision Restores Confrontation Clause Protection*, 19 Crim. Just. 4, 11 (Summer 2004) ("In most circumstances, the lab report should probably be considered testimonial. Therefore, the lab technician who made the report should testify at trial if available to do so."); Paul C. Giannelli, *Admissibility of Lab Reports: The Right of Confrontation Post–Crawford*, 19 Crim. Just. 26 (Fall 2004) ("[A] laboratory report is simply the affidavit of an expert."); Pamela R. Metzger, *Cheating the Constitution*, 59 Vand. L.Rev. 475, 511 (2006) ("There can be no question that forensic laboratory reports are testimonial.").

volved such neutral, scientific evidence," the government asserts. *Id.* at 18. Such broad statements are open to question; though we do not doubt the overall integrity, competence and disinterestedness of DEA chemists, there have been numerous reports in the years since *Howard* indicating that government forensic laboratories are not immune from problems of dishonesty, sloppiness, poor training, bias, unsound methodology, and scientific or other error.[16] But the neutrality and trustworthiness of DEA chemists and their reports are beside the point after *Crawford.* Reliability no longer shields testimony from confrontation. As *Crawford* makes clear, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." 541 U.S. at 62, 124 S.Ct. 1354.

The DEA chemist's report was a testimonial statement. Therefore, the Confrontation Clause barred the prosecution from introducing the report at appellant's trial without calling the chemist to testify in person, unless the chemist was unavailable and appellant had a prior opportunity to cross-examine the chemist. Neither of the latter two prerequisites was met in this case. As the prosecution advised appellant prior to trial, the DEA chemist was available to testify, and she had not been made available to appellant for cross-examination prior to trial.

■ Nonetheless, the government argues that the Confrontation Clause was satisfied because appellant could have subpoenaed the chemist himself (without cost, per D.C.Code § 48–905.06) and questioned her as upon cross-examination as a hostile witness. The flaw in the logic of this argument is evident: if the chemist was available to the defense, then she also was available to the prosecution, *i.e.,* she was not unavailable to testify in person as *Crawford* categorically requires. *Crawford's* unqualified insistence on the declarant's unavailability as a precondition to admitting testimonial hearsay forecloses the argument that there exists an "available to the accused" exemption from the demands of the Confrontation Clause.[17]

16. In May 2004, for example, the Justice Department's Office of the Inspector General (OIG) issued a report entitled *The FBI DNA Laboratory: A Review of Protocol and Practice Vulnerabilities,* which detailed the misconduct, discovered by chance, of an FBI biologist who falsified her laboratory reports. The investigation found that the biologist's misconduct "has rendered over two years worth of her STR [Short Tandem Repeat analysis, a DNA typing method] work scientifically invalid and unsuitable for use in court, requiring the FBI Laboratory to repeat DNA testing in her cases." *Id.* at 47, 124 S.Ct. 1354. The report is available at http://www.usdoj.gov/oig/special/0405/index.htm.

Similarly, an OIG report on the Explosives, Materials Analysis, and Chemistry–Toxicology Units of the FBI Laboratory found "significant instances of testimonial errors, substandard analytical work, and deficient practices," including "scientifically flawed" and otherwise improperly prepared laboratory reports.

*The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives–Related and Other Cases,* Report of the Office of the Inspector General, U.S. Dept. of Justice (April 1997) (available at http://www.usdoj.gov/oig/special/9704a/index.htm).

For an overview of the extent to which the reliability of government forensic laboratory evidence has been challenged, *see* Metzger, *supra* footnote 15, at 491–500. "Anyone who would question the value of cross-examination in this context need only look at recent newspaper headlines." Giannelli, *supra* footnote 15, at 30.

17. Indeed, an "available to the accused" exemption cannot be squared with the facts of *Crawford.* The declarant in that case was the defendant's wife Sylvia, and the only reason the prosecution could not call Sylvia to testify at trial was the defendant's invocation of his marital privilege, "which generally bars a

To recognize an "available to the accused" exemption would be contrary not only to *Crawford's* express command, but to the plain language of the Sixth Amendment. The Confrontation Clause guarantees the accused the right "to be confronted with the witnesses against him." This language, employing the passive voice, imposes a burden of production on the prosecution, not on the defense. *State v. Snowden*, 385 Md. 64, 867 A.2d 314, 332 n. 22 (2005) (rejecting the theory that the defendant could call his accusers to the stand because "the burden of production ... is placed on the State [by the Confrontation Clause] to produce affirmatively the witnesses needed for its prima facie showing of the defendant's guilt"). In contrast with the accused's right "to have compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, which "is dependent on the defendant's initiative," the right to be confronted with the prosecution's witnesses and most other rights protected by the Sixth Amendment "arise automatically on the initiation of the adversary process and *no action by the defendant is necessary to make them active in his or her case." Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (emphasis added). The Court elaborated on this point by quoting with approval the following commentary:

"The defendant's rights to be informed of the charges against him, to receive a speedy and public trial, to be tried by a jury, to be assisted by counsel, and to be confronted with adverse witnesses are designed to restrain the prosecution by regulating the procedures by which it presents its case against the accused. *They apply in every case, whether or not the defendant seeks to rebut the case against him or to present a case of his own. ...*"

*Id.* at 410 n. 14, 108 S.Ct. 646 (quoting Peter Westen, *The Compulsory Process Clause*, 73 Mich. L.Rev. 71, 74 (1974)) (emphasis added).

The rights of confrontation and compulsory process are not interchangeable. It has been said that "[o]nly a lawyer without trial experience would suggest that the limited right to impeach one's own witness is the equivalent of that right to immediate cross-examination which has always been regarded as the greatest safeguard of American trial procedure." *New York Life Ins. Co. v. Taylor*, 79 U.S.App. D.C. 66, 74, 147 F.2d 297, 305 (1944). More fundamentally, the "available to the accused" theory of the Confrontation Clause is flawed because it "unfairly requires the defendant to choose between his right to cross-examine a complaining [or other prosecution] witness and his right to rely on the State's burden of proof in a criminal case." *Snowden*, 867 A.2d at 332–33 (quoting *Lowery v. Collins*, 988 F.2d 1364, 1369–70 (5th Cir.1993)). If the defendant exercises his constitutional right to put the government to its proof and not put on a defense, the prosecution evidence—what *amicus* aptly calls "the misleadingly pristine testimonial hearsay of absent wit-

spouse from testifying without the other spouse's consent." 541 U.S. at 40, 124 S.Ct. 1354. *Crawford* therefore was a case in which the declarant, though unavailable to the prosecution, most assuredly *was* available to the defendant, who could have called her in his defense case and examined her about her tape-recorded statement to the police. If there ever was a case for recognizing an "available to the accused" exception to the right of confrontation, *Crawford* was it. But Sylvia's availability to the defendant was of no moment; it did not stop the Supreme Court from concluding that "[i]n this case, the State admitted Sylvia's testimonial statement against petitioner, despite the fact that *he had no opportunity to cross-examine her.* That alone is sufficient to make out a violation of the Sixth Amendment." *Id.* at 68, 124 S.Ct. 1354 (emphasis added).

nesses"[18]—may appear deceptively probative in the absence of cross-examination. In effect, the lack of confrontation would ease the government's burden of proof. Alternatively, any defense presentation may be hamstrung and disrupted if the defendant—unlike the prosecutor—must call not only the witnesses "in his favor," but also the witnesses "against him." Ultimately the effect could be to blur the presumption of innocence and the principle that the burden of proof on the prosecution "never shifts throughout the trial."[19]

To be sure, the government does not invite us to adopt an "available to the accused" exemption from confrontation on a wholesale basis. Rather, the government argues that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). An accommodating bow is appropriate for DEA chemists' reports, the government urges, because such putatively objective, scientific evidence is seldom in dispute, and requiring the expert to appear in every drug prosecution therefore would be a waste of time and public resources.[20]

This plea of administrative convenience, which echoes the reliability rationale of *Howard*, does not persuade us. *Crawford* explicitly held that reliability cannot justify abrogating a defendant's right of confrontation. Nothing in *Crawford* suggests that its *per se* rule may be annulled based on *Roberts*-era notions of balancing the confrontation right against the "other legitimate interests" identified by the government. "*Crawford* removed the flexibility courts had to balance the state's interests, however legitimate, against the need for prior cross-examination and unavailability of the witness before testimonial evidence can be admitted." *Caulfield*, 722 N.W.2d at 312. Even prior to *Crawford*, moreover, the Supreme Court held that curtailment of the right of confrontation is permissible "only" if it shown to be "*necessary* to further an important public policy." *Maryland v. Craig*, 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (upholding state procedure allowing testimony of alleged victim of child sex abuse to be received by one-way closed circuit television, where necessary to protect child from serious trauma caused by testifying in defendant's presence) (emphasis added). There has been no showing of necessity in the present case.[21] In fact, as we discuss

---

**18.** Reply Brief of *Amicus Curiae* at 17.

**19.** CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction No. 2.08 ("Burden of Proof—Presumption of Innocence") (4th ed. rev. 2004).

**20.** Although the government seeks in this case only to exempt DEA chemists' reports from the Confrontation Clause, its rationale would apply, or easily could be stretched to apply, to many other types of forensic scientific expertise. Given the widespread prosecutorial use of DNA test results, fingerprint identifications, ballistics reports, blood tests, hair and fiber analyses, toxicology reports, *et cetera*, acceptance of the government's argument could have a major impact on criminal prosecutions generally.

**21.** Certainly there has been no curtailment of the Confrontation Clause for DEA chemists' reports in federal court drug prosecutions. D.C.Code § 48–905.06 has no counterpart in the federal criminal code; nor, as previously noted, are DEA chemists' reports admissible under the hearsay exception for business records in the Federal Rules of Evidence. As a result, the chemists' reports are not admissible in evidence on government motion in federal court unless the chemist testifies in person or the defendant waives the chemist's appearance. We are given to understand that the government suffers no great inconvenience as a result. Most defendants, it appears, waive the presence of the chemist at trial by stipulating in advance of trial to the admissibility of the chemists' reports.

momentarily, the government's goals can be achieved without eroding the Confrontation Clause.

■ Our discussion thus far compels us to conclude that the Confrontation Clause admits no exception for DEA chemists' reports. That brings us to the question whether D.C.Code § 48–905.06 is constitutional. · In apparent contravention of *Crawford's* understanding of the Confrontation Clause, the statute directs that a chemist's report is admissible in evidence in the chemist's absence (even if the chemist is available, and even if the defendant had no prior opportunity to cross-examine the chemist), unless the defendant subpoenas the chemist to appear. In that event, the last sentence of the statute states, "the examination shall be as on cross-examination." *Id.* The government argues that we can and should construe the statute to avoid the apparent constitutional difficulty by "interpret[ing] the last sentence of section 48–905.06 to provide that if the defendant wishes to examine the chemist at trial, he or she should notify the govern-

ment, which then must present the chemist as a witness in its own case." Supplemental Brief of Appellee at 36. Such a construction, the government explains, would allow confrontation and cross-examination during the government's case without "requiring the chemist to testify in the majority of cases where the chemical analysis is not in dispute." *Id.* at 37.[22] The implication of the government's suggestion is that if the defendant fails to notify the government that he wishes to be confronted with the chemist at trial, the government will not need to call the chemist in order to introduce the chemist's report. In other words, under the government's proposal, a failure to demand confrontation would automatically constitute a waiver of the right.

We agree that D.C.Code § 48–905.06 should be construed so as to preserve its constitutionality if it is possible to do so. *See, e.g., Keels v. United States,* 785 A.2d 672, 684–85 (D.C.2001).[23] We conclude that a saving construction is fairly possible along the lines of the government's proposal.

22. In *Brown v. United States,* 627 A.2d 499, 506–07 (D.C.1993), we held that the Constitution does not require the government to produce the DEA chemist in its case-in-chief "instead of merely making him available during the defense case." While *Brown* was settled precedent at the time of appellant's trial, and precluded appellant from demanding that the government put the chemist on the stand, we do not view its holding as binding after *Crawford.*

23. In *Keels,* the court construed the provision of former D.C.Code § 22–2404.1 authorizing a sentence of life imprisonment without parole based on a finding of aggravating circumstances by "the court." In order to preserve the constitutionality of this provision under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we interpreted the statute to require that any such finding by the court be predicated on an equivalent finding beyond a reasonable doubt by the jury. We explained our choice of a

fairly possible construction of the statute that preserved its constitutionality as follows:

Consistent with guidance from the Supreme Court, *see National Labor Relations Bd. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), we have steadfastly adhered to the principle that "[w]here a constitutional challenge to a statute is made, and the statutory language permits, we construe [the] statute so as to avoid constitutional confrontation." *In re Johnson,* 699 A.2d 362, 369 (D.C.1997).... Put more directly, "[a]s between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that one [sic] which will save the act." *Tyler v. United States,* 705 A.2d 270, 279 (D.C.1997) (Schwelb, J., concurring) (quoting *Jones & Laughlin, supra,* 301 U.S. at 30, 57 S.Ct. 615, 81 L.Ed. 893).
*Keels,* 785 A.2d at 684–85.

In order for the prosecution to introduce the chemist's report in evidence without calling the chemist to testify, the record must show a constitutionally valid waiver by the defendant of his confrontation right. By leaving assertion of that right to the defendant, D.C.Code § 48–905.06 evinces a clear legislative preference to have this question of waiver resolved in advance of trial, in the interests of efficiency and so as to avoid unnecessary disruption of the operations of the DEA laboratory. We see no objection in principle to resolving the question of waiver prior to trial; it is not burdensome for a defendant represented by counsel to have to state, when asked, whether he waives his rights or not.[24] For the waiver to be valid, however, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *see, e.g., Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (waiver of Sixth Amendment right to confrontation). Because a valid waiver cannot be presumed from a silent record, "demand-waiver" rules, under which defendants presumptively waive constitutional rights if they do not affirmatively demand them, are disfavored. *See Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (rejecting demand-waiver rule for Sixth Amendment right to a speedy trial; "[s]uch an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with [the Supreme] Court's pronouncements on waiver of constitutional rights.") (footnote omitted).

Given the rule that a valid waiver may not be presumed from a silent record, and the Supreme Court's disinclination to accept demand-waiver rules for Sixth Amendment rights, the best course for the government obviously will be to obtain an express waiver by the defendant, on the record in advance of trial, when the defendant has not responded to the government's statutory notification by requesting the chemist's presence at trial. Such an express waiver typically may, but need not, take the form of a stipulation by the defendant as to the contents of the chemist's report. The trial court may assist the process by addressing at a pretrial hearing whether the defendant elects to waive his right to be confronted with the chemist. (Of course, if the defendant expressly declines to stipulate or otherwise excuse the presence of the chemist, that is equivalent to a refusal to waive the Sixth Amendment right of confrontation, and the government then must call the chemist in its case in order to introduce the chemist's report.)

Trial courts therefore seldom if ever should be faced with the question whether to infer a valid waiver of the right of confrontation, in the absence of an express waiver, simply from a defendant's pretrial failure to notify the government to produce the chemist. However, if a defendant represented by counsel is provided with the chemist's report and is advised that a failure to request the chemist's presence for purposes of confrontation will be understood as a waiver of the right and as a stipulation to the admissibility of the chemist's report, we think that a trial court would be justified in inferring a valid waiver from an unexplained or unexcused failure by the defendant to respond. *Cf. Barker*, 407 U.S. at 528–29, 92 S.Ct. 2182.

Thus, we construe D.C.Code § 48–905.06 to preserve its constitutionality. Where a defendant expressly asserts his

---

**24.** We note that a defendant would not be precluded from changing his mind, so long as the prosecution is not prejudiced by having relied on the defendant's election to its detriment.

Sixth Amendment right by subpoenaing the chemist or otherwise informing the government that he wishes to cross-examine the chemist at trial, we have no difficulty accepting the government's suggestion to construe the provision that "the examination shall be as on cross-examination" to mean that the prosecution must call the chemist in its case. Conversely, so long as the record shows a constitutionally valid waiver by the defendant of his confrontation right, D.C.Code § 48–905.06 authorizes the government to introduce the chemist's report in evidence without calling the chemist to testify.

■■■■ The record does not show a valid waiver in this case.[25] We therefore conclude that it was constitutional error to admit the DEA chemist's report at appellant's trial in the government's case-in-chief in the chemist's absence. The first prong of the plain error test is satisfied.

### B. Was the Error "Plain"?

■■■■ Having found error, we turn to whether the error should be considered "plain." "[T]he word 'plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544 (quoting *Olano,* 507 U.S. at 734, 113 S.Ct. 1770) (internal quotation marks omitted). Usually, the issue is whether the error was plain at the time of trial, *i.e.,* whether the error was "so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object." *United States v. Gore,* 154 F.3d 34, 43 (2d Cir.1998) (internal quotation marks and citation omitted). If that were the issue here, we could not possibly find such dereliction, for *Crawford* had not yet been decided at the time of

appellant's trial. In *Johnson,* however, the Court held that "in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." 520 U.S. at 468, 117 S.Ct. 1544.

The present case differs from *Johnson* in one respect that might be thought significant. The error in *Johnson* arose in a prosecution for knowingly making a false material declaration under oath before a grand jury. In accordance with then-prevailing Circuit precedent, and without objection from defendant Johnson, the trial court decided the issue of materiality instead of submitting it to the jury. Thereafter, before Johnson's appeal was decided, the Supreme Court held in *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that the materiality of a false statement is for the jury to decide. The trial court's error thus was clear by the time Johnson's case was considered on appeal; the governing law had changed after trial but *before* "the time of appellate consideration" in *Johnson* itself. In contrast, in the present case we are asked to find plain error based on a change in the governing law that we have *not* declared before now. It is true, of course, that we are applying the principles set out in *Crawford,* which was decided in 2004. However, while *Crawford* undeniably created uncertainty as to the continuing viability of *Howard's* constitutional holding and the constitutionality of D.C.Code § 48–905.06, we have not heretofore resolved that uncertainty. Although none of the parties before us has raised

---

**25.** Appellant's failure to subpoena the DEA chemist or otherwise respond to the government's Notice of Compliance Pursuant to 48 D.C.Code § 905.06 (or to raise a Confrontation Clause objection at trial) was not a valid waiver of his right of confrontation because settled precedent at the time of appellant's trial prevented him from requiring the government to produce the DEA chemist in its case-in-chief. See footnote 22, *supra.*

the question, it fairly can be asked whether an appellate court properly may find an error to be "plain" in the same case in which it first declares the change in the law that enables it to find error at all.

 We think a finding that the error is "plain," or obvious, is as mandatory in these circumstances as it was in *Johnson.* The rationale of *Johnson*—that a defendant should not be required to raise "useless" objections at trial in order to benefit on appeal from a post-trial reversal of settled law, *see* 520 U.S. at 468, 117 S.Ct. 1544—is equally applicable whether the reversal occurs in the defendant's own appeal or in someone else's appeal, so long as it occurs before the decision in the defendant's appeal is rendered. If the appellate court's opinion determines the law and finds error, the error by definition is plain "*at* the time of appellate consideration," *id.,* and clear "under *current* law." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. (Emphases added.) It would be anomalous and arbitrary to hold otherwise, for as soon as the opinion were to issue, it would be precedent that would establish both "error" and "plainness" in all other pending direct appeals by similarly situated appellants raising the same plain error claim. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding that a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review ..., with no exception for cases in which the new rule constitutes a 'clear break' with the past").

We conclude that the *Crawford* error in this case is plain at this time, and that the second prong of the plain error test therefore is satisfied.[26]

### C. Did the Unconstitutional Admission of the Chemist's Report Affect Appellant's Substantial Rights?

 In order to show that the nonstructural error in this case affected his substantial rights, appellant must show a reasonable probability that the Confrontation Clause violation had a prejudicial effect on the outcome of his trial. *See United States v. Dominguez Benitez,* 542 U.S. 74, 81–82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) ("In cases where the burden of demonstrating prejudice (or materiality) is on the defendant seeking relief, we have invoked a standard with similarities to the *Kotteakos [v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ] formulation in requiring the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.' ") (citations omitted);[27] *see also Olano,* 507 U.S. at

---

26. Our holding that *Johnson's* special plain error rule applies to the unconstitutional admission of a chemist's report in a pre-*Crawford* trial should not be misunderstood to apply to trials conducted after *Crawford* was decided. After *Crawford,* the governing law in this area was no longer settled; the continuing viability of our *Roberts*-based holding in *Howard* was clearly in doubt. In trials conducted after *Crawford,* therefore, an objection would not necessarily have been futile. *Johnson's* plain error rule—that an error need only be plain at the time of appellate consideration if an objection at trial would have been futile under then-settled law—therefore does not apply to the admission of chemists' reports in post-*Crawford* trials. Instead, if a defendant failed to raise a Confrontation Clause objection based on *Crawford* in a trial held after *Crawford* was decided, the forfeited claim would be subject to the usual plain error test on appeal.

27. "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Dominguez Benitez,* 542 U.S. at 83, 124 S.Ct. 2333 (citation omitted).

735, 113 S.Ct. 1770 ("Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)."). [28]

The error in this case had an obviously prejudicial effect on the outcome of appellant's trial. The DEA chemist's report was the main, if indeed not the only, proof offered by the prosecution that the ziplocks distributed by appellant contained a measurable amount of a mixture containing cocaine—an essential element of the drug distribution offense with which appellant was charged. *See Hicks v. United States,* 697 A.2d 805, 807 (D.C.1997); D.C.Code § 48–902.06(1)(D) (2001); *cf. Bernard v. United States,* 575 A.2d 1191, 1194–95 (D.C.1990) (holding circumstantial evidence sufficient to establish that defendant sold a "usable" amount of marijuana). This is enough to establish that the erroneous admission of the report affected appellant's substantial rights. *See, e.g., Drayton v. United States,* 877 A.2d 145, 148–49 (D.C.2005) (holding that if trial court's verdict was based on hearsay statements of victim admitted in violation of the Confrontation Clause, the error "clearly would not only affect substantial rights but would seriously affect the fairness and integrity of the proceedings"); *United States v. Bruno,* 383 F.3d 65, 79–80 (2d Cir.2004) (holding that defendant's substantial rights were affected by unconstitutional admission of out-of-court testimonial statements that established elements of the charged

offenses). The third prong of the test for plain error is satisfied.

## D. Did the Error Seriously Affect the Fairness, Integrity, or Public Reputation of the Proceedings?

"When the first three parts of *Olano* are satisfied, an appellate court must then determine whether the forfeited error 'seriously affects the fairness, integrity or public reputation of judicial proceedings' before it may exercise its discretion to correct the error." *Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544 (citations omitted). The Supreme Court answered that question "in the negative" in *Johnson, id.* at 470, 117 S.Ct. 1544, and we conclude that we must do the same in this case.

In *Johnson,* the trial court failed to submit materiality, an essential element of the charged offense, to the jury, in violation of the defendant's Sixth Amendment jury trial right. The Supreme Court held that this constitutional error was plain and assumed *arguendo* that it affected the appellant's substantial rights. Nonetheless, because materiality was "essentially uncontroverted" at trial and the evidence supporting materiality was "overwhelming," *id.,* the Court found that the error did not satisfy the fourth requirement for reversal. "No 'miscarriage of justice' will result here if we do not notice the error," the Court stated, "and we decline to do so." *Id.*

The admission of crucial evidence in violation of the Confrontation Clause has been found to undermine the fairness, in-

28. The Second Circuit has held that where (as in the present case) a supervening decision alters settled law, the *Olano* conditions for finding reversible plain error still must be met, but with "one crucial distinction: the burden of persuasion as to prejudice (or, more precisely, lack of prejudice) is borne by the government, and not the defendant." *United States v. Viola,* 35 F.3d 37, 42 (2d Cir.1994). Although the *Viola* court's ratio-

nale for this modification of the plain error test is persuasive, no other Circuit has embraced it, and its "continuing viability" after *Johnson* has been questioned even in the Second Circuit. *See United States v. Stewart,* 433 F.3d 273, 294 n. 5 (2d Cir.2006). Given the conclusion we reach that appellant has shown prejudice, we need not decide in this case whether to follow *Viola.*

tegrity and public reputation of judicial proceedings in other cases. *See, e.g., Drayton, supra; Bruno, supra; United States v. Pugh,* 405 F.3d 390, 403 (6th Cir.2005). The question must be answered in light of the specific facts of each case, however, and we cannot come to the same conclusion in this case. The following considerations, which serve to distinguish this case from the others cited, inform our judgment.

As to the fairness of the proceeding, appellant was provided a copy of the DEA chemist's report, including the chemist's worksheet, prior to trial, and he was warned that it would be offered in evidence against him. He had a fair opportunity to investigate and challenge the chemist's report, and he could have subpoenaed and cross-examined the chemist if he doubted her findings, qualifications, or methodology. Yet appellant has never disputed the accuracy of the chemist's report; while appellant denied being the seller, he has never denied what was sold. Nor did appellant raise a valid objection to the admission of the report in evidence. Much like the element of materiality in *Johnson,* the chemist's report in this case is "essentially uncontroverted." Having elected not to contest the identity of the cocaine mixture at his trial, appellant cannot claim that fairness requires that he nonetheless be given a chance to contest it now. *Crawford* certainly did not hold that the denial of the right of confrontation *necessarily* undermines the fairness of a criminal proceeding.

As to the integrity of the proceeding (apart from its fairness to appellant), there is no reason whatsoever to believe that the chemist's report was unreliable. The other evidence at trial—notably, the circumstances of the sale itself, the ziplock packaging of the drugs, the physical appearance of the contents (a "white rocky substance"), the positive field test conduct-

ed by Officer Garner, and expert witness testimony concerning the *modus operandi* of drug dealing—strongly corroborated the chemist's identification. It would have come as quite a surprise if the ziplocks had turned out not to contain cocaine. And we cannot disregard the factors identified and relied upon by this court in *Howard* (and the courts of many other jurisdictions as well) that support the reliability of the chemist's report—the objective and routine nature of the testing, the use of a well-established chemical procedure, the duty of the chemist to be accurate, and the absence of any motive on the part of the chemist to falsify the results. *Howard,* 473 A.2d at 839. *Crawford* did not hold that confrontation is always necessary for reliable fact finding. *See Love v. Dretke,* 444 F.3d 333, 337 (5th Cir.2006) ("[T]he rule announced in *Crawford* does not assure greater accuracy because it bars admission of a statement to which it applies even when the statement is highly reliable."); *Murillo v. Frank,* 402 F.3d 786, 790 (7th Cir.2005) ("[I]t would be a close question whether *Crawford* helps or hinders accurate decision making. . . . The point of *Crawford* is not that only live testimony is reliable, but that the Sixth Amendment gives the accused a right to insist on live testimony, whether that demand promotes or frustrates accuracy.").

Lastly, given what we have said regarding the fairness of the procedure and the reliability of the evidence, it is difficult to see how the use of the DEA chemist's report at appellant's trial otherwise could be thought to have impugned the public reputation of the judicial proceeding. The chemist's report was admitted in accordance with the settled law at the time of trial. This is not a case in which either the prosecutor or the trial judge was derelict in any way.

In view of the foregoing considerations, we see no basis to conclude that the fair-

ness, integrity or public reputation of appellant's trial was undermined by the introduction of the chemist's report. No one could have thought so at the time of trial, and the Supreme Court's subsequent decision in *Crawford* does not alter that fact. We are satisfied, as the Supreme Court was in *Johnson*, that no miscarriage of justice will result in this case if we do not notice the error.

## III.

 For the foregoing reasons, the admission of the DEA chemist's report in

violation of the Confrontation Clause does not entitle appellant to reversal of his conviction. Appellant's other arguments for reversal are without merit.[29] Accordingly, appellant's conviction is

*affirmed.*

**29.** Appellant argues that the trial court should have granted his motion to suppress his in-court and out-of-court identifications because he was stopped by the police without probable cause or reasonable articulable suspicion. We disagree. Appellant was stopped because Officer McClinton pointed him out as the person who had just sold him cocaine, and appellant rather closely matched the description Officer McClinton had broadcast.

Appellant also contends that the trial court erred in admitting extensive expert testimony concerning the *modus operandi* of drug dealers, which he argues was substantially more prejudicial than probative. We have recognized, however, that "[b]ecause the use, sale, and packaging of [drugs] on the streets are

not matters within the ken of the average lay person, expert testimony on the *modus operandi* of drug traffickers may be admitted if relevant." *Hinnant v. United States*, 520 A.2d 292, 293 (D.C.1987). The trial court has "broad discretion" to admit or exclude such expert testimony, "and its decision either way will not be disturbed on appeal unless it is manifestly erroneous." *Id.* Especially given appellant's misidentification defense, which emphasized that he had no drugs or marked money in his possession when the police stopped him a half hour after the sale to Officer McClinton, we are not persuaded that the trial court abused its discretion in allowing considerable leeway for the expert's testimony in this case.