The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ted Anthony ESPINOZA, Defendant–Appellant.

No. 06CA0127.

Colorado Court of Appeals, Div. II.

April 3, 2008.

As Modified on Denial of Rehearing May 29, 2008.

Certiorari Denied Nov. 10, 2008.

John W. Suthers, Attorney General, Alexander C. Reinhardt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Ted Anthony Espinoza, appeals the judgment of conviction entered upon a jury verdict finding him guilty of aggravated driving after revocation prohibited, driving under restraint—alcohol-related offense, eluding a police officer, failure to have insurance, and failure to stop at a stop sign. We affirm the convictions for aggravated driving

after revocation prohibited, failure to have insurance, and failure to stop at a stop sign. We reverse the conviction for driving under restraint, vacate the conviction for eluding a police officer, and remand for correction of the mittimus.

## I. Background

A police officer observed defendant driving a vehicle that failed to stop completely at a stop sign. After the officer activated his emergency lights and siren, defendant continued driving slowly for approximately four blocks before stopping. Defendant then got out of the vehicle, left the engine running, and fled on foot. Other officers were called to the area and soon found defendant hiding in a shed outside a nearby house. Defendant was arrested and his vehicle was searched. In the search, the officers did not find any proof of insurance.

A jury convicted defendant of aggravated driving after revocation prohibited (DARP), driving under restraint—alcohol-related offense, eluding a police officer, failure to have insurance, and failure to stop at a stop sign. This appeal followed.

## II. Driving Record

Defendant contends the trial court erred when it admitted documents contained in his driving record. We disagree.

### A. Confrontation

■ Defendant contends that admission of "proofs of service" attached to his driving record violated his right to confrontation. At trial, however, he objected only on the ground of hearsay, and did not argue that admission of the documents would violate his confrontation rights. Therefore, we review his Confrontation Clause argument for plain error. *See People v. Vigil*, 127 P.3d 916, 929–30 (Colo.2006).

We reverse for plain error only when an error is obvious and substantial and so undermines the fundamental fairness of the trial that serious doubt is cast on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

■ When evaluating a Confrontation Clause issue, we must first determine whether the statement was testimonial. A trial court may not admit testimonial hearsay statements against a defendant unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Raile v. People*, 148 P.3d 126, 130 (Colo.2006).

In *Crawford*, the Supreme Court provided several formulations that described, without adopting, a "core class of 'testimonial' statements," including "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354.

In *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Court provided further guidance, saying that statements made in response to police interrogation are testimonial when there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

In *Hinojos–Mendoza v. People*, 169 P.3d 662, 667 (Colo.2007), the Colorado Supreme Court held that a Colorado Bureau of Investigation laboratory (CBI lab) report was testimonial for purposes of *Crawford*. There, law enforcement contacted the defendant, searched his vehicle, and found a large block of cocaine. A CBI lab technician weighed the seized substance, analyzed it, and concluded that it was cocaine. The technician recorded these observations in a report that was provided to the prosecution. *Hinojos–Mendoza*, 169 P.3d at 664.

The supreme court concluded that the lab report was testimonial because it "was prepared at the direction of the police and a copy of the report was transmitted to the district attorney's office. There can be no serious dispute that the sole purpose of the report was to analyze the substance found in Hinojos–Mendoza's vehicle in anticipation of criminal prosecution." *Hinojos–Mendoza*, 169 P.3d at 667. The court explained that

the fact that a document falls within the business records exception to hearsay does not automatically render it nontestimonial. *Hinojos–Mendoza*, 169 P.3d at 666.

In *Thomas v. United States*, 914 A.2d 1, 14 (D.C.2006), the defendant was apprehended for possession and sale of a controlled substance. A Drug Enforcement Agency laboratory analyzed the substance and issued a report that attested that the lab technician was a trained chemist and described how she conducted her analysis. The court concluded that the report was testimonial because it was designed to serve as testimony in the defendant's trial and attested to, among other things, the technician's qualifications, the reliability of her testing methods and procedures, their general acceptance in the forensic science community, the purity of the chemical reagents, and the operability of the instruments she used to reach her conclusions.

The *Thomas* court observed that the Supreme Court has described "testimonial" "in functional rather than categorical terms" and noted that the Court had focused "on the primary anticipated or intended use of the statement, not on whether the statement qualifies as an exception to the rule against hearsay or falls into some other arbitrary testimonial category." *Thomas*, 914 A.2d at 14. The court in *Thomas* opined that "most documents are not testimonial if they qualify as business records, because most such documents are created for ordinary business purposes unrelated to their potential use by the government in a criminal prosecution." *Thomas*, 914 A.2d at 14.

In *Jackson v. United States*, 924 A.2d 1016, 1021 (D.C.2007), the court held that copies of a trial court's docket entries and a notice to return to court, which the defendant had signed, were not testimonial. There, the defendant had been released from custody pending criminal proceedings and was required to appear in court on a later date, but failed to do so. The trial court admitted a docket entry, indicating that the defendant's case had been continued for one week, that he was present in court at that time, and that he was advised of the penalties for failing to appear on the continued date. The trial court admitted a second docket entry from the continued date indicating that the defendant failed to appear. Each document was initialed by the courtroom clerk. The court also admitted a notice the defendant had signed, which included the date of the scheduled hearing and the possible penalties for failing to appear.

On appeal, the court concluded that the docket entries and notice were not testimonial because their primary purpose "was not to document facts or events for future prosecution, but rather to satisfy administrative functions necessary to the operation of the court," and the notice's primary purpose was "not to replace live testimony in a speculative future prosecution, the predicate for which may never occur," but "to provide official written notice to the defendant about his or her future court date(s) and to chronicle that such notice was given." *Jackson*, 924 A.2d at 1021.

Similarly, here, defendant was apprehended on January 15, 2004, and charged with, among other things, aggravated driving after revocation. The prosecution submitted a Certification of Official Records signed by the Custodian of Records of the Department of Revenue. The records included a printout of the computer data regarding defendant's driver history dated January 24, 2004, stating that defendant's license status was "REVOKE HABITUAL TRAFFIC OFFNDR [sic]." The records also included a Department of Revenue Form DR 2190, captioned "PROOF OF SERVICE," which stated, "It is unlawful for you to operate a motor vehicle on any roadway in Colorado." The document indicated that it was served on defendant on October 12, 2003. There were three other proofs of service on defendant in 1996 and 1998. Thus, all the documents existed before defendant committed the offenses for which he was prosecuted.

We conclude that the documents are not testimonial for purposes of *Crawford* because the proofs of service reflected the administrative status of defendant's driving privilege, and their primary functions were to notify him that he was not permitted to drive a motor vehicle in Colorado and to record that such notice was given. The documents were

not created in response to an interrogation or a request from the prosecution regarding criminal conduct but were created before defendant engaged in the conduct for which he was charged. Although an objective person who prepared such a proof of service might reasonably believe it would be available in the event of a later traffic violation, we conclude that this possibility does not make the document testimonial where, as here, the document served a routine administrative function and was created before the charged crime occurred. *See State v. King,* 213 Ariz. 632, 146 P.3d 1274, 1280 (App.2006) (driving record not testimonial because it was maintained regardless of future criminal activity and existed independent of prosecution); *State v. Dukes,* 174 P.3d 914, 917–18 (Kan.Ct.App.2008) (driving record not testimonial as record must be kept regardless of whether it later becomes relevant in a criminal prosecution); *State v. Davis,* 211 Or.App. 550, 156 P.3d 93, 96 (2007) (driving records not testimonial because they are not maintained for the primary purpose of criminal investigations).

We are not persuaded otherwise by *People v. Pacer,* 6 N.Y.3d 504, 814 N.Y.S.2d 575, 847 N.E.2d 1149, 1154 (2006), upon which defendant relies. In *Pacer,* the trial court admitted an affidavit that was created by a government official *after* the defendant committed the charged offense. In the affidavit, the official stated that a license revocation notice had been mailed to the defendant, and the prosecution conceded that the affidavit was prepared for the prosecution's use at trial.

Accordingly, we conclude that defendant's right to confrontation was not violated by the admission of the documents and that there was no error, let alone plain error.

### B. Prosecutor as Witness

■ Defendant next contends that the trial court abused its discretion when it admitted a proof of service that the prosecutor had signed in 1998 and when it denied his request to disqualify the prosecutor. We disagree.

■ A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *People v. Stewart,* 55 P.3d 107,

122 (Colo.2002). Likewise, we review a trial court's ruling on the disqualification of a prosecutor for an abuse of discretion. *People v. Dunlap,* 124 P.3d 780, 798 (Colo.App. 2004).

■ A district attorney must be disqualified in a criminal case where that attorney or a member of his or her staff will appear as a witness and give testimony of sufficient consequence to prevent a fair trial. *Pease v. District Court,* 708 P.2d 800 (Colo.1985); *see also People v. Palomo,* 31 P.3d 879, 882 (Colo.2001) (disqualification appropriate if an attorney in the district attorney's office is a "material" witness). Such circumstances do not exist where the district attorney's testimony will be cumulative or relevant only to an uncontested matter. *Dunlap,* 124 P.3d at 798.

Here, the primary issue was whether defendant's driving privilege was under suspension on January 15, 2004, based on his habitual traffic violations. The most probative evidence of this allegation was the proof of service dated October 12, 2003, and defendant's driving record dated January 24, 2004. The proof of service that the prosecutor had signed was dated nearly six years before defendant's arrest, the district attorney did not testify on behalf of the People, and defendant did not attempt to call him as a witness to challenge the admissibility or credibility of the document.

We therefore conclude the admission of the proof of service was proper, and the trial court did not abuse its discretion in denying defendant's request to disqualify the prosecutor.

### III. Sufficiency of Evidence

Defendant contends that the prosecution did not present sufficient evidence to support his convictions for aggravated DARP, driving under restraint—alcohol-related offense, and the failure to have insurance. We agree as to the driving under restraint conviction but disagree as to DARP and failure to have insurance.

The Due Process Clauses of the Colorado and United States Constitutions require the prosecution to prove the existence of every

element of a charged offense beyond a reasonable doubt. *People v. Mersman*, 148 P.3d 199, 201 (Colo.App.2006).

When assessing the sufficiency of evidence, a reviewing court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to support a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999). The weight and credibility of the evidence is entrusted to the judgment of the jurors. *People v. McGlotten*, 166 P.3d 182, 188 (Colo.App.2007). However, a verdict in a criminal case may not be based on speculation or conjecture. *People v. Stark*, 691 P.2d 334, 339 (Colo. 1984).

## A. DARP

Defendant contends that there was insufficient evidence to support his conviction for aggravated DARP for three reasons. We disagree with each assertion.

### 1. Revocation

Defendant contends that the prosecution failed to prove his driving privileges were under revocation on the date of the DARP offense. We disagree.

To be guilty of aggravated DARP, a person must be found to be a habitual offender and to operate a motor vehicle in this state while the revocation is in effect. § 42–2–206(1)(b)(I), C.R.S.2007.

As noted earlier, one of the proofs of service was dated October 12, 2003. In addition, a certified copy of defendant's driving record was admitted and showed that, as of January 24, 2004, his license was under revocation based on his status as a habitual traffic offender.

We conclude a reasonable fact finder could properly infer that the revocation was in effect between those dates, including the date of the offense, January 15, 2004.

### 2. Knowledge

The prosecution was required to establish that defendant drove with knowledge

his license had been revoked because of his status as a habitual traffic offender. *Griego v. People*, 19 P.3d 1, 6 (Colo.2001). Defendant argues that the prosecution failed to establish that he drove with the requisite knowledge. We disagree.

Here, the prosecution introduced defendant's driving record showing he was a habitual traffic offender. This record included proofs of service that notified defendant it was unlawful for him to operate a motor vehicle in Colorado. Two of the proofs of service stated that he was a habitual traffic offender, and the police officer involved testified that defendant fled on foot after he was directed to stop his vehicle.

Examining this evidence in the light most favorable to the prosecution, we conclude the jury could infer that defendant drove with knowledge that his license had been revoked because he was a habitual traffic offender. *See People v. Parga*, 964 P.2d 571, 574 (Colo. App.1998) (driving record is relevant to establish knowledge of status as a habitual traffic offender).

### 3. Eluding

Defendant contends the prosecution failed to demonstrate that he committed the DARP offense based on eluding or attempting to elude a police officer because fleeing on foot does not fall within the ambit of the eluding statute. We disagree.

When interpreting a statute, our primary duty is to give effect to the intent of the legislature. We look first to the plain language of the statute before invoking alternative canons of statutory construction. *People v. Banks*, 9 P.3d 1125, 1128 (Colo.2000).

To convict defendant of aggravated DARP, the prosecution had to establish that he committed the offense of eluding or attempting to elude a police officer, as described in section 42–4–1413, C.R.S.2007. § 42–2–206(1)(b)(I)(D), C.R.S.2007.

Section 42–4–1413 provides as follows:
Any operator of a motor vehicle who the officer has reasonable grounds to believe has violated a state law or municipal ordinance, who has received a visual or audible signal such as a red light or a siren from a

police officer driving a marked vehicle ... directing the operator to bring the operator's vehicle to a stop, and who willfully increases his or her speed or extinguishes his or her lights in an attempt to elude such police officer, or willfully attempts in any other manner to elude the police officer, or does elude such police officer commits a class 2 misdemeanor traffic offense.

Section 42–4–1413 makes it a class 2 misdemeanor for the operator of a motor vehicle, who has received a signal from a police officer driving a marked vehicle, to elude or attempt to elude the police officer in any manner.

Defendant here was the operator of a motor vehicle when the police officer signaled him to stop, but instead of stopping defendant continued driving slowly for four blocks. He then stopped the vehicle and fled on foot. Defendant's actions can reasonably be construed as an attempt to avoid contact with the officer.

■ Defendant nevertheless asserts that application of *ejusdem generis* compels the conclusion that his act of fleeing on foot is not within the ambit of the statute. The principle of *ejusdem generis* provides that where a general term follows a list of specific persons or things in a statute, the general term includes only those persons or things of the same general kind or class as those specifically mentioned. *Winter v. People,* 126 P.3d 192, 195 (Colo.2006); *Davidson v. Sandstrom,* 83 P.3d 648, 656 (Colo.2004). Defendant asserts that actions proscribed by the term "any other manner" must be of the same kind or class as the preceding actions of causing the vehicle to increase speed or extinguishing the vehicle's lights. Therefore, according to defendant, "any other manner" only includes attempts to flee in which the operator uses the vehicle to do so. We are not persuaded.

■ The phrase "any other manner" is broad and clarifies that an operator violates the statute regardless of how the operator attempts to elude the police. Furthermore, the legislature established the more serious offense of "vehicular eluding" when a person "while operating a motor vehicle," eludes or

attempts to elude a police vehicle that is pursuing him or her, and the person operates his or her vehicle in a reckless manner. Section 18–9–116.5, C.R.S.2007. Such an offense is a felony, as opposed to this offense, which is a misdemeanor. We conclude the legislature's use of the phrase "while operating a motor vehicle" as to this crime, in contrast to its decision not to use that phrase as to misdemeanor eluding, makes it clear that the legislature did not intend to limit misdemeanor eluding to situations in which the person eluded police while operating a vehicle.

Accordingly, we conclude there was sufficient evidence to support defendant's conviction for aggravated DARP.

### B. Driving Under Restraint

■ Defendant also asserts that the prosecution did not produce sufficient evidence to support his conviction for driving under restraint—alcohol-related offense. We agree.

As pertinent here, to prove this offense, the prosecution had to establish that defendant was driving a motor vehicle with knowledge that his license or privilege to drive had been restrained for a conviction of an alcohol-related offense. § 42–2–138(1)(d)(I), C.R.S. 2007.

At trial, the prosecution introduced a certified copy of defendant's driving record that had been redacted by stipulation of the parties. The driving record reflected that the motor vehicle division had taken several actions over the years to restrain defendant's driving privileges. However, there was no evidence that, at the time of the offenses here, defendant's driving privileges had been revoked as a result of an alcohol-related conviction.

We therefore conclude that the prosecution did not produce sufficient evidence to support defendant's conviction for driving under restraint—alcohol-related offense and that the conviction must be reversed.

### C. Insurance

■ Defendant next contends that the prosecution did not produce sufficient evidence to support his conviction for failure to have insurance because there was no evi-

dence the arresting officer asked defendant to produce proof of insurance. We disagree.

The arresting officer testified that he was never provided with proof of insurance, and that no documentation was found in the vehicle after defendant was arrested. Neither the arresting officer nor any other officer testified that proof of insurance was ever requested from defendant.

Defendant was convicted under section 42–4–1409(2), C.R.S.2007, which requires that the prosecution establish that the defendant was operating a motor vehicle on the public highways of this state without a complying policy or certificate of self-insurance in full force and effect.

Section 42–4–1409(5), C.R.S.2007, provides that "[t]estimony of the failure of any owner or operator of a motor vehicle to present [proof of insurance] when requested to do so by a peace officer, shall constitute prima facie evidence" of a violation of section 42–4–1409(2).

In *People v. Martinez,* 179 P.3d 23, 25 (Colo.App.2007), a division of this court concluded that, although the arresting officer did not explicitly ask for proof of insurance, there was prima facie evidence of lack of insurance when the defendant did not produce proof of insurance and documentation was not found during a search of the vehicle.

We agree with the analysis in *Martinez* and adopt it here. We therefore conclude there was sufficient evidence to support the lack of insurance conviction under section 42–4–1409(2).

### IV. Merger

■ Defendant contends, the People concede, and we agree, that his conviction for eluding must be vacated because it merges with his conviction for aggravated DARP. § 18–1–408(1)(a), C.R.S.2007; *People v. Leske,* 957 P.2d 1030, 1035 (Colo.1998).

Accordingly, we vacate the eluding conviction, and on remand, the trial court must amend the mittimus to so reflect. *See People v. Carlson,* 119 P.3d 491, 494 (Colo.App.2004).

The judgment of conviction is affirmed with regard to aggravated DARP, failure to have insurance, and failure to stop at a stop sign. The judgment of conviction for driving under restraint—alcohol-related offense is reversed, and the judgment of conviction for eluding a police officer is vacated. The case is remanded to the trial court with directions to enter a judgment of not guilty on the driving restraint—alcohol related offense charge. The court should amend the mittimus accordingly.

Judge ROTHENBERG and Judge BERNARD concur.