The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 7, 2020

**2020COA78**

**No. 18CA0528, *People v. Sims* — Crimes — Eluding or Attempting to Elude a Police Officer — Aggravated Driving After Revocation Prohibited; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

In this challenge to the sufficiency of evidence to sustain a conviction for eluding or attempting to elude a police officer under section 42-4-1413, C.R.S. 2019, a division of this court rejects the defendant's argument that "eluding" or "attempting to elude" requires some sort of evasive action that makes it harder for the police to follow. Rather, depending on the circumstances, elude may simply be defined as to avoid, escape, or not be caught. The division also holds that the defendant's conviction for eluding or attempting to elude a police officer should merge into his conviction for aggravated driving after revocation prohibited.

COLORADO COURT OF APPEALS

**2020COA78**

Court of Appeals No. 18CA0528
Larimer County District Court No. 14CR1014
Honorable Stephen E. Howard, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dustin Robert Sims,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE VOGT*
Dunn and Johnson, JJ., concur

Announced May 7, 2020

Philip J. Weiser, Attorney General, Danny Rheiner, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    In 2014, a jury convicted defendant, Dustin Robert Sims, of eluding or attempting to elude a police officer, aggravated driving after revocation prohibited (aggravated DARP), and two lesser offenses.  On direct appeal, a division of this court concluded that police officers had given improper opinion testimony at trial about whether Sims's conduct amounted to "eluding," which was an ultimate issue to be decided by the jury.  The division reversed in part and remanded for a new trial on the charges of eluding or attempting to elude and aggravated DARP.  *See People v. Sims*, (Colo. App. No. 15CA0475, June 15, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 2    At the second trial, Sims was again found guilty on those counts, and he now appeals.  Sims first contends that the evidence was insufficient to sustain his conviction for eluding or attempting to elude a police officer (without that conviction, his DARP conviction would not be aggravated).  Second, he contends that his eluding or attempting to elude conviction should have been merged into his conviction for aggravated DARP.

¶ 3     We disagree with his first contention but agree with the second.  We therefore affirm the judgment in part, vacate it in part, and remand for further proceedings.

## I.     Background

¶ 4     The evidence at the second trial in this case showed the following.

¶ 5     Sims was told to leave a rodeo in Estes Park, Colorado, when he became irate and belligerent following an unfounded allegation about a theft of a cowboy hat.  Sims then drove to a local police station to lodge a complaint against the police officer who had been involved in the incident at the rodeo.  When the station was initially unable to provide Sims with a complaint form, he became frustrated and left.  He described his mental state upon leaving the station as "enraged."

¶ 6     Meanwhile, the officer involved in the rodeo incident had been dispatched to bring a complaint packet to the station for Sims to fill out.  The officer had learned through a records check after the incident that Sims's driving status had been revoked as a habitual traffic offender.  When the officer was driving into the station

parking lot, he observed Sims backing out of a parking space, and he saw that one brake light on Sims's car was out.

¶ 7     The officer, driving a marked patrol vehicle, tried to initiate a traffic stop of Sims's car by activating the vehicle's emergency lights.  Sims did not pull over but continued driving, within the speed limit.  The officer then sounded his siren, using three different siren tones, but Sims still did not respond.  Another officer joined the pursuit, also activating his emergency lights and sirens, and other drivers pulled their cars off to let the officers pass.  Sims kept driving, all the while within the speed limit.  After pursuing Sims for just over three miles, the officers discontinued the pursuit at the city limits based on the local police department's policy.

¶ 8     A sergeant with the county sheriff's department heard about the pursuit over dispatch.  After the local officers stopped their pursuit and asked the sheriff's department for help, the sergeant began pursuing and eventually caught up to Sims's car two-and-a-half miles down the road.  He activated his emergency lights and sounded different sirens, including a very loud air horn.  Sims kept driving, within the speed limit.  During the sergeant's pursuit, he noticed Sims smoking a cigarette and flicking the ashes

3

out the window.  After pursuing Sims's car for two miles, the sergeant conducted a precision immobilization technique maneuver, causing Sims's car to spin off the road.  Sims was arrested at the scene.

¶ 9    Sims testified that he was driving with loud music on and with an earbud in one ear and that he did not hear or see any police cars behind him.

¶ 10    The jury found Sims guilty on both counts.

II.    Sufficiency of the Evidence of Eluding or Attempting to Elude

¶ 11    Sims contends that the evidence was insufficient to sustain his conviction for eluding or attempting to elude a police officer because eluding or attempting to elude requires some type of "trick" or "evasive action" that makes it harder for the police to follow.  He cites the following as possible examples: increasing one's speed, turning off one's headlights, swerving around other cars, or ducking onto a side road.  He argues that "the prosecution has to show that a person did something more than simply refuse to stop," and that because "he just continued to drive normally, and he followed all applicable traffic regulations while doing so," the evidence was insufficient to sustain his conviction.  We disagree.

## A. Standard of Review

¶ 12    When assessing the sufficiency of the evidence supporting a conviction, we review the record de novo to determine whether the relevant evidence, viewed as a whole and in the light most favorable to the prosecution, was sufficient to support the conclusion by a reasonable juror that the defendant was guilty beyond a reasonable doubt. *Butler v. People*, 2019 CO 87, ¶ 20.

¶ 13    We review issues of statutory construction de novo. *Garcia v. People*, 2019 CO 64, ¶ 33.

## B. Law Criminalizing Eluding or Attempting to Elude

¶ 14    The General Assembly has defined the crime of eluding or attempting to elude a police officer as follows:

> Any operator of a motor vehicle who the officer has reasonable grounds to believe has violated a state law or municipal ordinance, who has received a visual or audible signal such as a red light or a siren from a police officer driving a marked vehicle showing the same to be an official police, sheriff, or Colorado state patrol car directing the operator to bring the operator's vehicle to a stop, and *who willfully increases his or her speed or extinguishes his or her lights in an attempt to elude such police officer, or willfully attempts in any other manner to elude the police officer, or does elude such police officer* commits [the] class 2

> misdemeanor traffic offense [of eluding or attempting to elude a police officer].

§ 42-4-1413, C.R.S. 2019 (emphasis added).

¶ 15     The evidence required to establish eluding or attempting to elude under section 42-4-1413 has been addressed in two published Colorado cases, neither of which involves the same circumstances as those presented here.

¶ 16     In *People v. Espinoza*, 195 P.3d 1122, 1125 (Colo. App. 2008), after a police officer activated his emergency lights and siren to conduct a traffic stop of the defendant's car, the defendant drove slowly for four blocks and then fled on foot.  In concluding that the evidence of eluding or attempting to elude was sufficient, the division relied primarily on the defendant's attempted flight on foot. *See id.* at 1128-29.

¶ 17     In *People v. Procasky*, 2019 COA 181, ¶¶ 3-5, 18-25, after officers activated their lights and sirens to conduct a traffic stop of the defendant's car, the defendant drove for two blocks, pulled into a parking lot, stopped his car, and followed the officers' directions thereafter.  Finding *Espinoza* distinguishable because that case focused on the defendant's flight on foot, the *Procasky* division

6

concluded that the evidence of eluding or attempting to elude was insufficient.  *See id.* at ¶¶ 18-25.

### C. What Does "Elude" Mean?

¶ 18   The word "elude" is not defined in the relevant statutory scheme, nor is it defined in the Colorado Model Criminal Jury Instructions.  The jury in this case was not provided with a definition for the word.

### 1. Dictionary Definitions

¶ 19   When jury instructions do not provide a definition for a particular term, the jury is presumed to apply the common meaning or meanings of the term.  *People v. Walden*, 224 P.3d 369, 379 (Colo. App. 2009).  Although jurors are of course not permitted to consult a dictionary for such information, *see People v. Holt*, 266 P.3d 442, 446-47 (Colo. App. 2011) (juror improperly brought a dictionary definition of "elude" or "eluding" into jury room), we may do so to determine how a reasonable juror might construe the meaning of a term, *see Cowen v. People*, 2018 CO 96, ¶ 14 ("When determining the plain and ordinary meaning of words, we may consider a definition in a recognized dictionary.").

¶ 20    In this case, however, dictionary definitions do not provide a definitive answer.  On the one hand, some definitions support Sims's contention that eluding requires proof that the defendant took some kind of evasive action.  Both Webster's Ninth New Collegiate Dictionary 405 (1990) and the online Merriam-Webster Dictionary, https://perma.cc/GP67-7ZYZ, define "elude" as "to avoid adroitly."  The term "adroitly," in turn, is defined as using "skill, cleverness, or resourcefulness."  Merriam-Webster Dictionary, https://perma.cc/5UQF-9GB7.  *See also* The American Heritage Dictionary of the English Language 582 (4th ed. 2000) (defining "elude" as "to evade or escape from, as by daring, cleverness, or skill").

¶ 21    On the other hand, some definitions of elude do not require evasive action.  *See* Cambridge Dictionary, https://perma.cc/47AL-5DNH (defining "elude" as simply "to not be caught by someone"); *see also* Collins English Dictionary, https://perma.cc/XJ6A-YJL4 ("If you elude someone or something, you avoid them or escape from them."); Macmillan Dictionary, https://perma.cc/N3AF-YE49 (defining elude as "to manage to escape or hide from someone or something").

¶ 22    Relying on dictionary definitions, then, does not show that a reasonable juror would necessarily think that some kind of evasive action is required before "eluding or attempting to elude" can be found.

### 2.    The Principle of *Ejusdem Generis*

¶ 23    Nor do we agree with Sims that such evasive action is required if we construe the relevant statute according to the principle of *ejusdem generis*.  Under that principle of statutory construction, "when a general word or phrase [in a statute] follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Davidson v. Sandstrom*, 83 P.3d 648, 656 (Colo. 2004) (quoting Black's Law Dictionary 535 (7th ed. 1999)).

¶ 24    Applying that principle to section 42-4-1413, Sims argues, means that because the statute's specific examples of attempting to elude — increasing one's speed and extinguishing one's lights — involve tricks or evasive actions, the general clause that follows — "attempts in any other manner to elude" — must be interpreted to include only tricks or evasive actions.  We disagree.

¶ 25    As the division in *Espinoza* explained, the "phrase 'in any other manner' [in the last clause of section 42-4-1413] is broad and clarifies that an operator violates the statute regardless of how the operator attempts to elude the police."  195 P.3d at 1129; *see also, e.g.*, *Gooch v. United States*, 297 U.S. 124, 128 (1936) (relying in part on statute's use of the broad term "otherwise" in declining to apply *ejusdem generis* principle to construction of federal kidnapping statute).

¶ 26    Applying *ejusdem generis* here would, instead, narrow the construction of the phrase "in any other manner," and would narrow the reach of section 42-4-1413.  When we consider that statute as part of the broader statutory scheme addressing similar behavior, we discern nothing to suggest that the General Assembly intended such a narrow construction.  *See S.A.S. v. Dist. Court*, 623 P.2d 58, 62 n.5 (Colo. 1981) (The principle of *ejusdem generis* "should not be applied in a manner that hinders the attainment of the objectives contemplated by the statutory scheme.").

¶ 27    A different statute, section 18-9-116.5, C.R.S. 2019, addresses "vehicular eluding," which is a felony.  Conviction of that felony requires proof that the driver "operate[d] his or her vehicle in a

10

reckless manner." § 18-9-116.5(1). Section 18-9-116.5 thus would not apply in a situation where, as here, the driver was not driving recklessly.

¶ 28    Another statute, section 42-4-705(1), C.R.S. 2019, addresses failing to yield the right-of-way to an emergency vehicle:

> Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals . . ., the driver of every other vehicle shall yield the right-of-way and where possible shall immediately clear the farthest left-hand lane lawfully available to through traffic and shall drive to a position parallel to, and as close as possible to, the right-hand edge or curb of a roadway clear of any intersection and shall stop and remain in that position *until the authorized emergency vehicle has passed*, except when otherwise directed by a police officer.

(Emphasis added.) A person who violates this statute commits a class A traffic infraction, § 42-4-705(3)(a), and must pay a penalty of between $15 and $100, § 42-4-1701(3)(a)(I), C.R.S. 2019.

¶ 29    Although Sims was in fact found guilty at his first trial of violating section 42-4-705(1) as a lesser nonincluded offense related to the eluding charge, it does not follow that this statute was intended to afford the only remedy available for the type of conduct at issue in this case. By its plain language, section 42-4-705(1) is

11

intended to address drivers who fail to yield the right of way so that emergency vehicles can pass easily to get to an emergency, not drivers who themselves are being pursued by police officers.

¶ 30 Considering the related statutes, sections 42‑4‑705(1) and 18-9-116.5, leads us to agree with the *Espinoza* division that the clause in section 42‑4‑1413, "attempts in any other manner to elude," must be construed broadly. Otherwise, someone who required police to pursue him for miles, albeit without driving recklessly, would be guilty only of failing to yield the right-of-way to an emergency vehicle — a result which we view as inconsistent with the legislative intent evidenced in the statutory scheme described above.

¶ 31 We also note that courts in other jurisdictions have, under different statutory schemes, recognized that driving some distance to avoid being pulled over can amount to eluding police even if no traffic laws are being broken. *See State v. Donkers*, 867 N.E.2d 903, 925 (Ohio Ct. App. 2007) (Even where elude is construed to mean "slyly avoid[] with artifice, stratagem, or dexterity," "one could come up with various theories to support appellant's intent to elude. For instance, one could believe that she was trying to leave

12

the jurisdiction and was hoping the trooper could not follow."); *see also People v. Sanchez*, 103 Cal. Rptr. 2d 809, 814 (Ct. App. 2001) ("[A]s can be attested to by those who watched the ludicrous pursuit of Orenthal James Simpson in his white Bronco, a driver can flee or otherwise attempt to elude pursuing officers in a manner that does not pose a high probability of death to anyone."); *State v. James*, 237 P.3d 672, 679-80 (Mont. 2010) (Rice, J., concurring in part and dissenting in part) ("O.J.'s quixotic quest had not been done recklessly and had not endangered but, nonetheless, he had exhibited the criminal objective of eluding police.").

### 3. The Meaning of Elude

¶ 32 In sum, we do not agree with Sims that "elude" must invariably include some kind of trick or evasive action. Rather, depending on the circumstances, elude may simply be defined as "avoid," "escape," or "to not be caught." This does not mean that any time a person does not immediately stop when a police car directs him or her to do so, the person is guilty of violating section 42-4-1413. The statute also requires that the driver be found to have acted "willfully." Where, for example, a driver continues driving for miles without pulling over, despite being pursued by

13

police with activated lights and sirens, a reasonable jury could conclude that he or she was willfully attempting to elude the police officer. Conversely, as in *Procasky*, pulling over after a short distance and then cooperating with police could be insufficient to establish a violation of section 42-2-1413.

¶ 33 Finally, we do not agree with Sims that a construction that permits the jury to consider factors such as the length of time or distance driven renders the statute unconstitutionally vague. Contending that we must designate a specific distance to avoid vagueness, Sims asks: "If driving for two blocks is not enough, then what is?" In our view, it is not necessary to decide, as a matter of law, how far a driver can drive before violating the statute. Each case will involve differing facts, and we are confident that reasonable jurors will be able to decide, based on all the evidence, whether the prosecution has shown beyond a reasonable doubt that the defendant's conduct amounted to willfully eluding or attempting to elude a police officer.

## D. Application

¶ 34 The jury in the second trial heard evidence that the first pursuing officer knew that Sims's driver's license had been revoked,

and Sims also was aware of that fact; the officers, and the sergeant with the county sheriff's department, pursued Sims in marked vehicles, sounded sirens, and activated their emergency lights; Sims had his car window open at least long enough to flick a cigarette; and Sims drove over three miles, leaving the police officers' jurisdiction, and then continued driving for some two miles after the sergeant caught up with him.

¶ 35　This evidence, considered under the standards set forth above, was sufficient to support a conclusion by a reasonable juror that Sims was guilty beyond a reasonable doubt of willfully eluding or attempting to elude a police officer under section 42-4-1413.  The fact that he did not violate any traffic laws while driving does not require a contrary conclusion.

## III.　Double Jeopardy and Merger

¶ 36　Sims also contends that his conviction for eluding or attempting to elude a police officer is a lesser included offense, and therefore should merge into his conviction for aggravated DARP. We agree.

¶ 37　Whether convictions for different offenses merge is a question of law that we review de novo.  *Page v. People*, 2017 CO 88, ¶ 6.

Because Sims did not request this relief in the trial court, we review for plain error. *See Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 34-47. However, in this context, "when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy." *Friend v. People*, 2018 CO 90, ¶ 45 (quoting *Reyna-Abarca*, ¶ 81).

¶ 38 When a defendant's conduct establishes the commission of more than one offense, the defendant may be prosecuted for each such offense, but he or she may not be convicted of more than one offense if "[o]ne offense is included in the other," that is, if the lesser offense "is established by proof of the same or less than all the facts required to establish" the greater offense. § 18-1-408(1)(a), (5)(a), C.R.S. 2019. In other words, "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Friend*, ¶ 34 (quoting *Reyna-Abarca*, ¶ 64).

¶ 39 The aggravated DARP statute, section 42-2-206(1)(b)(I), C.R.S. 2019, states:

A person commits the crime of aggravated [DARP] if he or she is found to be an habitual offender and thereafter operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect *and, as a part of the same criminal episode, also commits any of the following offenses:*

. . . .

(C) Reckless driving . . .;

(D) Eluding or attempting to elude a police officer . . .;

. . .; or

(F) Vehicular eluding . . . .

(Emphasis added.)

¶ 40     The italicized clause above — "and, as a part of the same criminal episode, also commits any of the following offenses" — means that the offenses listed in the subsections under section 42-2-206(1)(b), including eluding or attempting to elude under subsection (D), are lesser included offenses of aggravated DARP. *See Espinoza,* 195 P.3d at 1130 ("Defendant contends, the People concede, and we agree, that [defendant's] conviction for eluding must be vacated because it merges with his conviction for aggravated DARP."); *see also People v. Dutton,* 2014 COA 51,

¶¶ 27-36 (concluding that reckless driving under subsection (C) and vehicular eluding under subsection (F) are lesser included offenses of aggravated DARP, but merging only the reckless driving conviction into the aggravated DARP conviction in order to uphold as many sentences as legally possible); *cf. Zubiate v. People*, 2017 CO 17, ¶¶ 17-21 (under the strict elements test, driving under restraint — which is not listed in any subsection under section 42-2-206(1)(b) — is not a lesser included offense of aggravated DARP), *disapproved of by People v. Rock*, 2017 CO 84, ¶ 16 n.4.

¶ 41     Consistent with the legal principles set forth above, the jury instruction on aggravated DARP in Sims's case set forth the elements the jury was required to find, including that, "(7) as part of the same criminal episode, [Sims] committed the following crime: Eluding or Attempting to Elude a Police Officer." However, as noted, although the jury convicted Sims of aggravated DARP and eluding or attempting to elude a police officer, the two offenses were not merged at sentencing.

¶ 42     Citing *People v. Dominguez*, 2019 COA 78, ¶ 63, the People argue that merger is not required because Sims committed two separate and temporally distinct instances of eluding or attempting

to elude: one in attempting to elude the local police officers, the other in attempting to elude the sergeant during the last two miles of the pursuit. We are not persuaded.

¶ 43　　In *Dominguez,* a division of this court recognized that multiple convictions for two separate offenses, the elements of one of which constitute a subset of the elements of the other, can stand if the offenses were committed by distinctly different conduct. *Id.* The *Dominguez* division held that the defendant's reckless driving and vehicular eluding convictions did not merge where the evidence presented supported two factually and temporally distinct instances of reckless driving. *Id.* at ¶¶ 66-71; *see also People v. McMinn*, 2013 COA 94, ¶¶ 8, 31-35 (prosecution charged defendant with, and tried him on, four counts of vehicular eluding, one for each pursuing officer; merger was not required where each act was "a new volitional departure" in the defendant's course of conduct, not merely a single, continuous, uninterrupted act of eluding).

¶ 44　　In contrast to *Dominguez* and *McMinn,* the prosecution charged Sims with a single count of eluding or attempting to elude and, in that charge, presented evidence of Sims's single, continuing, and uninterrupted act of eluding or attempting to elude. The same

19

is true for the aggravated DARP charge — the prosecution did not specify any particular act of eluding or attempting to elude underlying that charge. Consistent with the charges, during closing argument at trial, the prosecutor argued to the jury that Sims had committed one continuous act of eluding:

> 7.8 miles. That was the distance that Mr. Sims eluded police. . . . [O]ne could debate, what is that distance at which failure to yield becomes eluding. I don't know if that distance is 100 feet or half a mile, or maybe even a mile. But I'm asking you to determine that it certainly is 7.8 miles, that when you fail to stop for police for 7.8 miles, the only reasonable conclusion is that you're attempting to elude police. And that's what happened here.

The prosecutor then addressed the aggravated DARP charge, saying to the jury, "if you consider or deliberate over the eluding count and you make the determination that he did not elude police, you cannot find that he committed aggravated driving while revoked as [a] habitual traffic offender."

¶ 45    Under these circumstances, we are unpersuaded by the People's arguments on this issue. *See Friend*, ¶ 23 ("[T]he information did not allege specific facts supporting each of these individual counts. Moreover, although before us the People have

attempted to assign specific facts to particular counts, the prosecution did not try the case that way."); *People v. Abiodun*, 111 P.3d 462, 471 (Colo. 2005) (To charge multiple counts of the same offense, the prosecution must charge them "with sufficient specificity to distinguish" them.).

¶ 46　　Eluding or attempting to elude a police officer is a lesser included offense of aggravated DARP, and the fact that Sims has convictions for both offenses "requires a remedy."　*See Friend*, ¶ 45 (quoting *Reyna-Abarca*, ¶ 81).

### IV.　Conclusion

¶ 47　　Sims's conviction for aggravated DARP is affirmed.　Sims's conviction for eluding or attempting to elude a police officer is vacated.　We remand for the trial court to merge Sims's conviction for eluding or attempting to elude a police officer into his conviction for aggravated DARP.

　　　　JUDGE DUNN and JUDGE JOHNSON concur.